[Cite as *State v. Howard*, 2014-Ohio-655.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :          APPEAL NO. C-130058
                                                TRIAL NO. B-1101634
     Plaintiff-Appellee,       :

  vs.                             :

DERON HOWARD,                     :          *O P I N I O N.*

     Defendant-Appellant.      :

                                                   :

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  February 26, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Defendant-appellant Deron Howard appeals the judgment of the trial court finding him guilty of aggravated murder, attempted murder, and two counts of aggravated robbery, all of which were accompanied by firearm specifications, and sentencing him to an aggregate sentence of life in prison without the possibility of parole, plus six years' additional confinement.  Because we find no merit in Howard's six assignments of error, we affirm the judgment of the trial court.

### *Factual and Procedural Background*

{¶2}   On July 7, 2007, Charles McCray, Jr., his girlfriend, Sarah Griesinger, Michael Tucker, and Kara Brown drove to a home on Yarmouth Street in Bond Hill so that McCray could change out of his work clothes before they all headed to the movies.  The women got out of the car and walked toward the house when at least two people confronted McCray and Tucker on the street.  McCray told the women to run.  Someone hit Tucker in the face with a hard object, knocking him unconscious. When Tucker regained consciousness, he realized he had been shot in the back, and he felt someone going through his pockets.  The attackers got away with an iPod, cash, and a Nokia cell phone.  Tucker was able to crawl into the house and seek help. McCray, however, had been shot in the torso and died from blood loss.

{¶3}   The police recovered hollow-point, .380-caliber bullet casings from the scene on Yarmouth, but did not locate any other physical evidence.  Neither of the women, nor Tucker, could make an identification of the suspects at the time.  With little evidence at this point and no leads, the case remained unsolved.

{¶4}   In December 2010, Martinez Pope, who had been charged with carrying a concealed weapon, approached police through his attorney with

2

information regarding the July 2007 murder.  Pope told police that he had been at Howard's house on July 7, 2007, when the following occurred: Howard had left the house at 4:00 p.m. and had returned sometime between midnight and 1:00 a.m. with Devon "Buddha" Hill and Michael "Mike Muscle" Morton.  Howard had announced that he had killed someone and had shot another on Yarmouth in Bond Hill.  The group had robbed the victims, but had only taken $30 and a Nokia phone.  Pope also told police that Buddha had been arrested just days after the murder with a .25-caliber firearm.

{¶5}   Based on the information from Pope, the police assisted Pope in arranging a secretly recorded phone call between Pope and Howard.  On the call, Howard discussed the night of July 7, 2007.  Howard stated that he had been the only shooter where one guy had been "boxed up," and that he had used hollow-point bullets.  Howard stated that he had been in an earlier shoot-out in Price Hill where he had been the only one shooting as well.

{¶6}   The police brought Howard to the station for an interview in January 2011.  Two officers conducted the interview and informed Howard of his *Miranda* rights.  Howard initially denied any knowledge of the July 7, 2007 shooting.  When Howard realized the police suspected his involvement, Howard told police that he wanted a lawyer, but he also stated that he wanted to be the first one to give police his side of the story.  Howard then admitted that he had been involved in the murder, attempted murder, and robbery that night with Buddha and Mike Muscle.  He admitted that the three had been in Price Hill earlier in the night looking for people to rob when an unknown person had opened fire on them.  The group had left Price Hill and had gone to Yarmouth Street in Bond Hill.  Howard stated that he had

3

been driving the vehicle and had not been armed that night, but that Buddha had carried a High Point .380-caliber firearm and Mike Muscle had carried a .22- or .25-caliber firearm. Howard claimed that Buddha had panicked during the robbery and had just started shooting. Howard denied having been the shooter, but he admitted that he had gotten out of the car to go through the pockets of one of the victims.

{¶7} The state indicted Howard for aggravated robbery, aggravated murder, and murder, accompanied by firearm specifications, with respect to McCray, aggravated robbery and attempted murder, also accompanied by firearm specifications, with respect to Tucker, and having a weapon while under a disability. Howard waived his right to a jury trial and his case was tried to a three-judge panel. At trial, the state presented testimony from Griesinger, Tucker, and Brown, who each recounted the events of July 7, 2007. The state also presented testimony from the responding officer, investigative officer Jennifer Mitsch, and Pope, among others. The state introduced the taped call between Pope and Howard, as well as a recording and transcript of Howard's interview with police.

{¶8} The trial court found Howard guilty on all counts, except for having a weapon while under a disability, which had been dismissed. Although the state sought a death-penalty sentence, the trial court imposed an aggregate sentence of life without the possibility of parole, plus an additional six-year prison term. Howard now appeals.

### Howard's Motions to Suppress

{¶9} In his first assignment of error, Howard argues that the trial court erred by denying his motions to suppress (1) an identification of Howard made by

Tucker from a photo lineup in 2011, and (2) Howard's statement to police implicating himself as an accomplice in the crime.

{¶10}  First, Howard argues that the trial court erred in overruling his motion to suppress a pretrial identification made by Tucker in 2011 from a police photo lineup.  Howard argues that the state violated identification procedures laid out in R.C. 2933.83, that the lineup was unduly suggestive, and that the identification was otherwise unreliable.   The state, however, never introduced evidence of the identification at trial.  Nor did Tucker identify Howard at trial.  Therefore, Howard cannot show that he was prejudiced by the denial of his motion.  *See, e.g., State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 27 (the court refused to address whether a pretrial identification violated a defendant's due-process rights because the state did not introduce any evidence of the identification at trial); *see also State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 8 (holding that where the state has failed to comply with R.C. 2933.83, a defendant's remedy is the opportunity for cross-examination at trial, and not suppression).

{¶11}  Second, Howard argues that the trial court erred by failing to suppress his interview with police because Howard had made an unambiguous request for counsel during the interview, which the police had ignored in violation of his *Miranda* rights.  Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact.  *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40.  This court accepts the trial court's factual findings if they are supported by competent, credible evidence; however, we independently determine, without deference to the trial court, whether the facts satisfy the applicable legal standard.  *Id.*

5

{¶12} In order to show a deprivation of counsel during police questioning in violation of the Fifth Amendment, an accused's invocation of his right to counsel must be clear and unambiguous. *State v. Kottner*, 1st Dist. Hamilton No. C-120350, 2013-Ohio-2159, ¶ 29, citing *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). An officer does not need to cease questioning if "a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel[.]" *Kottner* at ¶ 29, quoting *Davis* at 459.

{¶13} In *Kottner*, this court cited several examples where courts have held that an accused's request for counsel was too ambiguous. *See Kottner* at ¶ 30-31. In one of those examples, this court held that the following statement was not an unambiguous and clear request for counsel: "I would prefer a lawyer but I want to talk to you now[.]" *See id.* at ¶ 31, quoting *State v. Carr*, 1st Dist. Hamilton No. C-090109, 2010-Ohio-2764, ¶ 18.

{¶14} At the beginning of Howard's police interview, the police informed Howard of his *Miranda* rights, including his right to have a lawyer present. The officers told Howard that this was his opportunity to tell his side of the story, and that he was the first person with whom they had talked. Howard told the officers, "I would like to talk to a lawyer, I also want to talk to you, but like you say, I'm first * * * always good to be first." Later on, Howard stated, "But it's like – I want a lawyer, but then I know I have to wait and you might talk to [the other suspects] and whoever else you all got." Then, Howard said, "If I did want a lawyer, I mean I do, but I don't want – I guess I want an opportunity to be first."

{¶15} Howard's statements to police indicated that, although Howard wanted a lawyer, his opportunity to be the first to talk to the officers trumped his interest in having a lawyer present at that moment. Howard's statements are closely analogous to the example cited in *Kottner* where the accused stated that he would have preferred a lawyer, but that he did not want to wait for counsel before speaking with police. *See Kottner*, 1st Dist. Hamilton No. C-120350, 2013-Ohio-2159, at ¶ 31. Because Howard's statements did not amount to a clear and unambiguous request for an attorney, the trial court did not err in overruling Howard's motion to suppress his statements to police. *See id.* at ¶ 29.

{¶16} We, therefore, overrule Howard's first assignment of error.

### Other-Acts Evidence

{¶17} In his second assignment of error, Howard argues that the trial court erred by permitting evidence of Howard's other bad acts to be introduced at trial; specifically, that Howard was involved in a shoot-out in Price Hill earlier the same night of the murder, attempted murder, and robbery of McCray and Tucker.

{¶18} Evid.R. 404(B) precludes the admission of evidence of an accused's other bad acts or crimes when offered to prove the character of the accused in order to show that the accused acted in conformity with that character, but such evidence is admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* R.C. 2945.59.

{¶19} A trial court should conduct a three-part analysis when evaluating other-acts evidence. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 19. First, a trial court should "consider whether the other act

7

evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, the court should consider whether "evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other act evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* Third, the court should determine "whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

{¶20} The admission of other-acts evidence under Evid.R. 404(B) rests within the broad discretion of the trial court. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. Howard did not object to this evidence below; therefore, we review the admission of the evidence for plain error. *See* Crim.R. 52(B).

{¶21} The evidence regarding Howard's earlier shoot-out in Price Hill is relevant to show Howard's plan and intent to use a firearm during the course of the Yarmouth Street robbery. Howard claimed in his interview with police that the shooter had panicked during the robbery and had just started shooting. The evidence that Howard, Buddha, and Mike Muscle had been involved in an earlier shoot-out that same night as they were driving around looking for people to rob tends to disprove Howard's own version of events that the murder, attempted murder, and aggravated robbery were the result of panic. Therefore, we determine that the Price Hill shoot-out was both relevant and admissible for a legitimate purpose under Evid.R. 404(B). *See State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 35 (allowing evidence of prior instances of domestic violence

involving a victim to be admitted to rebut a defendant's claim that the victim's murder was an accident).

{¶22} Finally, we cannot determine that the admission of the evidence of the Price Hill shoot-out was unduly prejudicial. Howard was tried before a three-judge panel, thus we can presume that the court "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 91, quoting *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968). Therefore, the trial court did not abuse its discretion in admitting the evidence regarding the Price Hill shoot-out.

{¶23} We, therefore, overrule Howard's second assignment of error.

### *Motions for Mistrial*

{¶24} We address Howard's fourth assignment of error next, in which he argues that the trial court erred by overruling his motions for a mistrial. Howard moved for a mistrial when the trial court allowed the state to recall Officer Mitsch to correct her earlier testimony regarding the caliber of the firearm found in Buddha's possession just days after the murder. Howard also moved for a mistrial when the trial court permitted a firearm expert to testify that the murder weapon, although a .380, was not the same .380 police found in Buddha's possession.

{¶25} We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). "Mistrials need only be declared when a fair trial is no longer possible." *State v. Houston*, 1st Dist. Hamilton No. C-090536, 2010-Ohio-2367, ¶ 13, citing *State v. Herring*, 94 Ohio St.3d 246, 254, 762 N.E.2d 940 (2002).

{¶26} Howard first argues that the trial court abused its discretion by allowing Officer Mitsch to change her testimony. Officer Mitsch testified that the murder weapon was a .380-caliber firearm, and likely a High Point, and that the weapon found in Buddha's possession was a .25-caliber firearm. On cross-examination, Howard's counsel pointed out that the indictment against Buddha charged him with possessing a .380, and not a .25. After the discovery of Buddha's indictment, the trial court allowed Officer Mitsch to correct her testimony to reflect that Buddha had been found with a .380.

{¶27} The trial court did not abuse its discretion in allowing Officer Mitsch to correct her earlier testimony given that neither party disputed that her former testimony had not been accurate. *See* Evid.R. 611(A) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth[.]").

{¶28} Similarly, the trial court did not abuse its discretion in denying Howard's motion for a mistrial with regard to the firearm expert. Howard moved for a mistrial after the state announced that it intended to present testimony from a firearm expert that the gun used in the murder was not the same gun that had been found on Buddha, although both firearms had been .380s. Howard argues that the "late discovery" of the firearm expert's testimony substantially prejudiced his defense. The trial court denied Howard's motion, but allowed him a two-month continuance to consult his own firearms expert. Thus, we fail to see how Howard was prejudiced by the trial court's decision.

10

{¶29} The trial court did not abuse its discretion in overruling Howard's motions for a mistrial. We, therefore, overrule Howard's fourth assignment of error.

### Remarks by the Prosecutor in Closing Argument

{¶30} In his third assignment of error, Howard argues that the prosecutor's comments regarding Howard's credibility during closing argument amounted to prosecutorial misconduct. Howard takes issue with two comments by the prosecutor in closing. In the first, the prosecutor stated that, "It's amazing how often these guys will lie to get out of trouble[.]" In the second, the prosecutor stated, "The defendant wants us to believe Buddha was the shooter * * * and even though they wanted us to believe this was the murder weapon that Buddha had, when we said, fine, we'll test the thing, if it's the murder weapon, it's the murder weapon. Well you can't do that. [W]e called their bluff."

{¶31} In determining whether prosecutorial misconduct has occurred, the test is whether (1) the prosecutor's remarks were improper, and, if so, (2) "whether they prejudicially affected the accused's substantial rights." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 200. Although prosecutors may not state their personal beliefs regarding guilt and credibility, they may characterize a witness as a liar, or a claim as a lie, if the evidence reasonably supports that characterization. *State v. Jones*, 1st Dist. Hamilton No. C-060512, 2007-Ohio-5458, ¶ 39.

{¶32} We do not find the prosecutor's remarks to be improper because, taking the prosecutor's closing argument as a whole, the evidence reasonably supported the prosecutor's characterization of Howard's credibility. The evidence presented at trial showed that Howard's story had changed over time. First, he had

told Pope that he had been the only shooter. Then, when interviewed by police, he had initially denied any knowledge of the shooting only to later tell police he had been present at the scene and had participated in the robbery, but had not been carrying a gun. Thus, the evidence reasonably supported the state's theory that Howard was lying. *See Jones,* 1st Dist. Hamilton No. C-060512, 2007-Ohio-5458, at ¶ 39.

{¶33} Furthermore, the prosecutor's comments in closing did not affect Howard's substantial rights, especially in light of the fact that Howard's case was tried to a three-judge panel. *See White*, 15 Ohio St.2d at 151, 239 N.E.2d 65. Thus, the prosecutor's comments did not amount to prosecutorial misconduct.

{¶34} The third assignment of error is overruled.

### Sufficiency and Manifest Weight of the Evidence

{¶35} Howard's fifth assignment of error asserts that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. When reviewing a challenge to the sufficiency of the evidence, we must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the offenses proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. By contrast, when reviewing a challenge to the manifest weight of the evidence, we must determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice such that we must reverse the convictions and order a new trial. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶36}  Howard argues that the state failed to present credible evidence that he had been the shooter.  He argues that no physical evidence connected him to the scene and none of the three eyewitnesses, Griesinger, Tucker, or Brown, could identify him.  Howard also discredits the testimony from Pope as that of a "snitch" who only cooperated with the state to avoid a prison sentence for his own felony offense.  As to the recorded phone call between Howard and Pope, Howard characterizes his own statements on the call as "youthful erroneous bragging."

{¶37}  Howard's own admissions to police during his interview make him, at a minimum, complicit in the crimes.  Although he adamantly denied shooting the victims, he admitted to driving the vehicle that night and to getting out of the car to rob one of the victims.  The trial court was free to give little or no weight to Howard's self-serving statements to police.  Instead, the trial court could have found Pope's testimony to be more credible and could have chosen to believe that Howard was telling the truth when he told Pope on the recorded call that Howard was the only shooter that night.  The trial court, as the trier of fact in this case, was in the best position to judge the credibility of the witnesses, including Pope.  *See State v. Gorrasi*, 1st Dist. Hamilton No. C-090292, 2010-Ohio-2875, ¶ 12.

{¶38}  Therefore, we determine that Howard's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.  Accordingly, we overrule his fifth assignment of error.

### *Sentencing Errors*

{¶39}  In his sixth assignment of error, Howard argues that the trial court erred in sentencing him.

{¶40} We first address Howard's argument that the trial court should have merged the gun specifications accompanying his charges under the doctrine of allied offenses. This argument lacks merit because gun specifications are not offenses subject to merger. *See State v. Adams*, 1st Dist. Hamilton No. C-120059, 2013-Ohio-926, ¶ 34, citing *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus.

{¶41} Next, Howard argues that the trial court abused its discretion under R.C. 2929.11 and 2929.12 in sentencing him to life in prison without the possibility of parole. He contends that even though the victims suffered serious physical harm, a sentence with parole eligibility would have still protected the public because Howard would be in his sixties before he would be released. Howard also argues that he had been a teenager at the time of the offenses, and that he had not had any serious prior criminal convictions, which Howard argues the trial court should have considered in mitigating his sentence.

{¶42} Under the standard of review in R.C. 2953.08(G)(2), this court may only modify or vacate a sentence if the court "clearly and convincingly find[s]" that either (1) the record does not support the mandatory sentencing findings, or (2) that the sentence is "otherwise contrary to law." *State v. White*, 1st Dist. Hamilton No. C-130114, 2013-Ohio-4225, ¶ 11. We may presume that a trial court considered the factors in R.C. 2929.11 and 2929.12 absent an affirmative demonstration by a defendant to the contrary. *State v. Kennedy*, 1st Dist. Hamilton No. C-120337, 2013-Ohio-4221, ¶ 118.

{¶43} Howard concedes that his sentence was within the statutory range, and we cannot clearly and convincingly find that his sentence is contrary to law.

{¶44} Finally, Howard argues that the trial court imposed court costs without informing him of the community-service requirement in lieu of paying court costs. Howard was sentenced in January 2013, prior to the effective date of the current version of R.C. 2947.23(A)(1), which was amended by 2012 Sub.H.B. No. 247. *See State v. Bailey*, 1st Dist. Hamilton Nos. C-130245 and C-130246, 2013-Ohio-5512. Under the former version of R.C. 2947.23(A)(1) in effect when Howard was sentenced, if a trial court failed to notify a defendant of the possibility of court-ordered community service in lieu of paying costs, the proper remedy was to vacate the imposition of costs and remand the case for proper community-service notification. *See State v. Dillard*, 1st Dist. Hamilton No. C-120058, 2012-Ohio-4018, ¶ 8, citing *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781, 964 N.E.2d 423.

{¶45} Because Howard was sentenced to life without the possibility of parole, he will not be eligible to perform community service. Therefore, we cannot determine that the trial court erred in failing to notify him of community service in lieu of paying court costs under former R.C. 2947.23(A)(1).

{¶46} We, therefore, overrule Howard's sixth assignment of error, and affirm the judgment of the trial court.

Judgment affirmed.

DINKELACKER, P.J., and DEWINE, J., concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.