[Cite as *State v. Martin*, 2024-Ohio-2334.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 23CA3 |
| | : | |
| v. | : | |
| | : | |
| REBECCA M. MARTIN, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Kristie L. Gotwald, Dayton, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Adam J. King, Highland County Assistant Prosecutor, Hillsboro, Ohio, for Appellee.

Smith, P.J.

{¶1} Rebecca M. Martin ("Appellant"), appeals her convictions in the Highland County Court of Common Pleas for Grand Theft of a Motor Vehicle and Breaking and Entering. Appellant raises seven assignments of error. Having fully reviewed the record, pertinent Ohio law, and the arguments of counsel, we find merit only to a portion of Appellant's fifth assignment of error. Therefore, we sustain the fifth assignment of error to the extent that we find the trial court erred by ordering payment of storage fees without considering Appellant's present and future ability to pay and without supporting evidence as to the amount of storage

fees and the name of the person or entity to be paid. We vacate the restitution order and remand for the trial court's consideration of these issues. In all other aspects, the judgment of the trial court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On August 2, 2022, Appellant was indicted on two counts: Count One, Grand Theft of a Motor Vehicle, a violation of R.C. 2913.02(A)(1); and, Count Two, Breaking and Entering, a violation of R.C. 2911.13(B). The indictment arose after Caleb Cox reported to authorities that a motorcycle he had recently obtained through a trade was stolen from outside his residence. Cox had negotiated the trade with Appellant's teenage son. On August 31, 2022, Appellant appeared in court for arraignment. The trial court entered pleas of not guilty on her behalf. The matter was scheduled for a pretrial on September 21, 2022, and a jury trial on November 7, 2022.

{¶3} Appellant retained counsel. During the course of the trial court proceedings, Appellant filed a motion to dismiss based on her allegation that she was actually the owner of the allegedly stolen 2009 Kawasaki motorcycle. The State of Ohio filed a Memorandum Contra. The trial court denied Appellant's motion.

{¶4} On November 15, 2022, the State of Ohio also filed a motion in limine seeking to exclude evidence at trial of possible civil remedies available to

Appellant. On November 21, 2022, Appellant filed a response to the motion in limine and also filed proposed jury instructions. On November 22nd, the trial court granted the State's motion in limine "subject to further review at trial."

{¶5} At trial on February 21, 2023, Appellant's defense to the charges was that she actually owned the motorcycle at issue and was wrongly accused due to her son's actions, which she had not authorized. Appellant argued that the documentary evidence demonstrated that the motorcycle was titled in Appellant's name both on the title given to Caleb Cox and on a duplicate title. Appellant's son W.H. testified on her behalf, advising that he committed the actual taking of the motorcycle from Cox's residence and that Appellant did not know about his actions until after the fact.[1] The defense attempted to portray Appellant as a protective single mother who initially admitted to law enforcement officers that she took the motorcycle in order to protect her son from any criminal liability.

{¶6} On February 22, 2023, the jury entered guilty verdicts on both counts. The trial court proceeded to sentencing. The court imposed a prison sentence of 12 months on Count One, Grand Theft of a Motor Vehicle, a felony of the fourth degree, and a sentence of 6 months on Count Two, Breaking and Entering, a felony of the fifth degree. The sentences were to be served consecutively. The trial court

---

[1] We will refer to Appellant's son as "W.H." While he more than likely reached the age of majority by the time of trial, no evidence demonstrated his actual age. Defense counsel informed in opening that W.H. was 17 years old when the alleged crimes occurred but we are mindful that the statements of counsel are not evidence.

imposed additional financial sanctions which will be discussed in the fifth assignment of error.

{¶7} This timely appeal followed. On March 6, 2023, the trial court entered a Judgment Entry of Conviction Nunc Pro Tunc. Also on that date, Appellant filed a motion to stay judgment and set appellate bond. The trial court denied this motion. Appellant thereafter filed in this court the same motion, which was also denied. Where pertinent, trial testimony and additional procedural facts are set forth below.

## ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED IN DENYING MARTIN'S MOTION TO DISMISS.

II.   THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE.

III.  THE TRIAL COURT ERRED IN ITS JURY INSTRUCTIONS.

IV.   REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT DEPRIVED MARTIN OF A FAIR TRIAL.

V.    THE TRIAL COURT ERRED IN ITS ORDER OF RESTITUTION.

VI.   THERE WAS INSUFFICIENT EVIDENCE AND IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN A CONVICTION.

VII.  THE TRIAL COURT'S CUMULATIVE AND STRUCTURAL ERRORS REQUIRE REVERSAL.

## ASSIGNMENT OF ERROR ONE - DENIAL OF
## APPELLANT'S MOTION TO DISMISS

### A. STANDARD OF REVIEW

{¶8} Appellant filed a motion to dismiss alleging that she was the owner of the motorcycle and arguing that she was entitled to dismissal of the criminal indictment. Appellant argued that probable cause to support the charges did not exist. The State of Ohio filed a memorandum contra. On appeal, the State argues that the allegations in the indictment supported offenses under Ohio law and it would have been premature for the trial court to determine whether the State could satisfy its burden of proof prior to trial.

{¶9 Generally, appellate courts conduct a de novo review of a trial court's decision regarding a motion to dismiss an indictment. *State v. Brown,* 2018-Ohio-2267, 114 N.E.3d 228, at ¶ 12 (4th Dist.); *State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶ 5 (4th Dist.). (Internal citations omitted.) Accordingly, an appellate court does not defer to a trial court's decision, but instead independently determines whether the trial court's decision is legally correct. *Wheatley* at ¶ 5.

### B. LEGAL ANALYSIS

{¶10} Crim.R. 12(C)(2) provides:

> [P]rior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue including defenses and objections based on defects in the indictment. When a defendant moves to dismiss an indictment, the threshold

question is whether the trial court can determine the motion without reference to the general issue to be tried.  This is because a motion to dismiss an indictment tests the legal sufficiency of the indictment, regardless of the quality or quantity of the evidence that may be introduced by either the state or the defendant.  In conducting this pretrial review, courts may look to evidence beyond the face of the indictment.

{¶11} Appellant's motion to dismiss quoted the indictment as follows:

On or about June 18, 2022 and in Highland County, Ohio Rebecca Martin did, with purpose to deprive Caleb Cox, the owner of property, knowingly obtain or exert control over said property…without the consent of Caleb Cox, the owner or person authorized to give consent.

{¶12 } Appellant also set forth the following statements contained in the

State's Bill of Particulars:

1. Upon review the title, Ofc. Butler observed that the owner was Rebecca Martin.

2. [Martin's son] also advised Cox that it was in his mother's name.

3. Martin applied for a duplicate title…on June 16, 2022.

4. [Martin's son] would not answer any direct questions and only stated something to the effect of "It's my bike, it's not stolen."

5. Martin stated that she learned her son had traded her motorcycle for a dirt bike without her knowledge.

6. Martin claimed that [her son] had no right to sell "her stuff" as a juvenile.

{¶13} Appellant argued that the State's indictment and the bill of particulars demonstrate that W.H. contracted with Cox for the sale of her motorcycle. Citing *Bramley's Water Conditioning v. Hagen*, 27 Ohio App. 3d 300, 501 N.E.2d 38 (11th Dist.), Appellant pointed out that because W.H. was a juvenile, she could have undone the sale even after W.H. reached majority. Appellant also insinuated that Cox was using the criminal justice system to resolve a civil dispute. Appellant concluded that the charging documents demonstrated that there was an ownership dispute and in similar scenarios, courts have found no probable cause existing to support allegations that a crime was committed.[2]

{¶14} After hearing the arguments of the parties, the trial court noted:

> The definition of owner under RC. 2913.01 is "any person other than the actor, which would be the Defendant, who is the owner of, who has possession or control of, or has any license or interest in property or services."

---

[2] Appellant cited *State v. Howell,* 64 Ohio Misc 2, 23, 29, arguing that the court addressed the question of whether a person should be criminally charged with taking one's own property. *Howell* is neither binding on this court nor persuasive to us. *Howell* was a decision discharging a defendant after a preliminary hearing. The trial court determined under the circumstances of the case, probable cause did not exist to bind Howell to the grand jury on a charge of unauthorized use of a motor vehicle. The court discussed the definition of "probable cause." An important fact in this case is that the dealership which had filed the criminal complaint against Howell had reposessed the vehicle in dispute but had not returned Howell's down payment. The *Howell* court reasoned that Howell still held an interest in the vehicle. Herein, by the time Appellant filed the motion to dismiss, probable cause had in fact been found for her indictment. Appellant also cited *Preston v. Kelsey,* 6th Dist. Lucas No. L-85-352, 1986 WL 5376 (May 9, 1986). For the sake of brevity we will not set forth the convoluted facts underlying the civil matter. Suffice it to say that the appellate court in *Preston* was tasked with deciding a civil, not a criminal appeal for breach of contract and malicious prosecution. One of the issues considered was whether competent credible evidence to every element of malicious prosecution had been adduced. The "lack of probable cause" element had been stipulated by the parties due to Appellant's failure to appear at a preliminary hearing in the related underlying criminal proceeding. The appellate court concluded that there was competent credible evidence from which a jury could find that Appellant lacked probable cause in instituting the underlying criminal action against the Appellee.

The trial court continued, noting that the case concerned an issue of fact which the defense was asking him to decide, "which I cannot do" because the question will be "whether or not a jury would believe the Defendant's argument." [3]

{¶15} In making its ruling, the trial court discussed *State v. Rhodes,* 2 Ohio St.3d 74, 76, 442 N.E.2d 1299 (1982), wherein the Supreme Court of Ohio observed that "[T]he gist of a theft offense is the wrongful taking by the defendant, not the particular ownership of the property." *See also, State v. Gau,* 11th Dist. Lake No. 2018-L-044, 2018-Ohio-5191, at ¶ 19; *State v. Plata,* 12th Dist. Warren No. CA2013-05-049, 2014-Ohio-449, at ¶ 21 ("[T]he essence of the crime of theft is the wrongful taking rather than a particular ownership * * *.")  The court also observed that Appellant's credibility would be an issue.

{¶16} In *State v. House,* 9th Dist. Summit No. C.A.No.30785, 2023-Ohio-4833, the trial court dismissed defendant's indictment for having weapons under disability.  However, the appellate court found that the trial court improperly considered the quality and quantity of the State's evidence as to whether House was a fugitive from justice.  The Ninth District noted that:

> [A]sufficiency analysis, however, is not appropriate for a Crim.R. 12(C)(2) motion.  Instead, once the State puts on its

---

[3] The trial court also noted it seemed "odd" that Appellant would have signed the title in blank in advance.  The trial court also noted that the evidence regarding the juvenile's permission was somewhat an issue because her son had the motorcycle, the title, and the keys in his possession.

evidence at the trial of the general issue, the trial court can properly determine whether the State introduced sufficient evidence to support a conviction pursuant to Crim.R. 29.

*House*, at ¶ 9. The *House* court found that the trial court erred in dismissing House's indictment at the early stage in the process.

{¶17} The trial court herein was well-familiarized with the law as set forth by the Supreme Court of Ohio in *Rhodes*.  And, while the trial court contemplated the allegations of the indictment and the statements set forth in the bill of particulars, the trial court did not engage in a *quality* and *quantity* consideration.[4] Based on our de novo review, we find the trial court did not err in denying the motion to dismiss.  Appellant's first assignment of error is without merit and is hereby overruled.

{¶18} For ease of analysis, we next consider Appellant's sixth assignment of error.

### ASSIGNMENT OF ERROR SIX - SUFFICIENCY OF THE EVIDENCE AND MANIFEST WEIGHT OF THE EVIDENCE

{¶19} Appellant challenges the sufficiency of the evidence and the manifest weight of the evidence supporting her convictions for grand theft and breaking and entering.  As to the count alleging grand theft of a motor vehicle, Appellant begins

---

[4] *See, e.g.*, regarding denial of motion to dismiss indictment, *State v. Taylor,* 136 Ohio Misc.2d 18, 2005-Ohio-7141, 846 N.E.2d 106, at ¶ 10: "No such determination of the sufficiency of the evidence is necessary in the case at bar.  The grand jury has returned an indictment establishing probable cause.  A jury, or this court, will later determine whether the state has proven each element of the crime beyond a reasonable doubt."

by arguing that Cox's ownership was not proven beyond a reasonable doubt. Appellant argues that because she retrieved her own property, she could not "intend to deprive" Caleb Cox of his property, thus, the State failed to prove intent to support her conviction on grand theft of a motor vehicle. Appellant also argues that "knowingly obtaining property" was not proven because the evidence demonstrated both that her son actually took possession of the motorcycle at Cox's residence and that Appellant was not even with him when he took the motorcycle. Appellant also contends that because she did not commit grand theft, she could not have acted with purpose to commit a felony as required by breaking and entering. Appellant asserts that because there is no evidence that she accompanied her son to Cox's property, no evidence supports the element of "trespass" as required for breaking and entering. For the reasons which will follow, we find no merit to Appellant's sixth assignment of error.

## A. STANDARD OF REVIEW

{¶20} "Sufficiency" and "manifest weight" are two distinct legal concepts. *State v. Bennett*, 4th Dist. Ross No. 21CA3751, 2023-Ohio-2734, at ¶54; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 23. When reviewing whether the evidence is sufficient to sustain a conviction, the focus is on the adequacy of the evidence. *See State v. Sims,* 4th Dist. Athens No. 21CA15, 2023-Ohio-1179, ¶ 115. Thus, "[t]he standard of review is whether, after

viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.*

{¶21} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Bennett, supra*, at ¶ 55; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶22} The weight and credibility of evidence are to be determined by the trier of fact. *Bennett, supra* at ¶56; *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard,* 4th Dist. Meigs No.

13CA9, 2014-Ohio-4974, ¶ 28, citing *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶23} "In addition, '[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses.' " *Bennett, supra*, at ¶ 57, quoting *State v. Chancey*, 4th Dist. Washington No. 15CA17, 2015-Ohio-5585, ¶ 36, (internal citations omitted.) Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson,* 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶ 31, quoting *State v. Proby,* 10th Dist. Franklin No.15AP-1067, 2015-Ohio-3364, ¶ 42.

{¶24} A finding that a conviction is supported by the manifest weight of the evidence is " 'also dispositive of the issue of sufficiency.' " *Bennett, supra*, at ¶58, quoting *Sims,* 4th Dist. Athens No. 21CA15, 2023-Ohio-1179, ¶ 120, citing *State v. Waller*, 4th Dist. Adams No. 17CA1044, 2018-Ohio-2014, ¶ 30. Therefore, we will begin by considering whether Appellant's convictions for grand theft and breaking and entering are supported by the manifest weight of the evidence.

## B. LEGAL ANALYSIS

{¶25} Grand Theft of a Motor Vehicle, R.C. 2913.02(A) provides:

No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent* * *.

R.C. 2913.02(B)(5) provides that "if the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree." R.C. 2911.13(B), Breaking and Entering, provides: "No person shall trespass on the land or premises of another, with purpose to commit a felony." We next summarize the testimony presented at the one-day trial.

1. Caleb Cox

{¶26} Caleb Cox testified that he contacted the Hillsboro Police Department on June 18, 2022 after he noticed his 2009 blue Kawasaki ER6-N motorcycle was missing. When asked how he came in possession of the motorcycle, Cox testified that on June 14, 2022 he traded a dirt bike to W.H. for the blue Kawasaki motorcycle. The two men had discussed the trade on June 12, 2022 on Facebook Marketplace. The terms of the deal were discussed via Facebook Messenger.

{¶27} Cox asked W.H. whether he had a "clean title" for the motorcycle. W.H. responded that it was a "clean title in my mother's name." W. H. also messaged, "Alright, I can hopefully get the title tomorrow from my mom and come check it out. I'll let you know first thing when I get off work." Cox provided his address to W.H. so he could come to Cox's house for the trade.

{¶28} The physical exchange of the vehicles took place on June 14, 2022. W. H. arrived at Cox's address and brought the blue Kawasaki motorcycle. W.H. also provided a title and key to the motorcycle. In exchange for the motorcycle, Cox provided W.H. with a black 2008 Kawasaki KX-450 DIRT BIKE. The dirt bike was not titled in Cox's name. Cox explained that he had purchased the dirt bike from a friend and did not have it registered. The title Cox received from W.H. showed it was signed by "Rebecca Martin" as "seller." The title also showed that Appellant's signature had been notarized on June 13, 2022.

{¶29} Cox explained that he received the title on a Tuesday. During that week, he was working from 7 a.m. to 8 p.m. and did not have a chance to get to the Bureau of Motor Vehicles. Therefore, the motorcycle's title was never transferred into Cox's name prior to its disappearance. Cox kept the motorcycle in front of his apartment and kept the key in his apartment. The last time he saw the motorcycle was Friday, June 17, 2022. Cox realized it was missing when he woke up on the 18th. Cox called the police and Officer Brian Butler of the Hillsboro Police Department responded to Cox's report of a stolen motorcycle.

{¶30} Cox testified that he attempted to show Officer Butler the Facebook messages between W.H. and himself. Cox then discovered that W.H. had blocked him from viewing the Facebook account. Cox provided photographs and

screenshots of the Facebook conversations to Officer Butler.  Cox authenticated all the text message exhibits.[5]

{¶31}  Approximately two weeks after reporting the stolen motorcycle, on July 1, 2022, Cox located the motorcycle in Wilmington, Ohio at a Quick Stop. W.H. was riding the motorcycle.  Cox followed W.H., who tried to evade him. Cox was able to grab W.H., stop him from leaving, and contact the police.  This time, Detective Matt Hamilton of the Wilmington Police Department responded to take Cox's report.

{¶32}  Cox testified W.H. acted "erratic, spontaneous, thuggish, ridiculous."  Shortly after a tow truck arrived, Appellant showed up at the scene. Cox testified Appellant acted "possibly psychotic, * * * erratic, spontaneous, loud, obnoxious, crazy, and disrespectful."

{¶33}  Cox denied giving anyone permission to take the motorcycle.  He denied finding any note on his apartment door after the motorcycle went missing.

---

[5] The messages between Cox and W.H., along with photographs Cox took of the motorcycle, became the following exhibits at trial:

| | |
|---|---|
| Exhibit 1 | Photograph of blue Kawasaki ER6-N motorcycle; |
| Exhibit 2 | Photograph of W.H.'s Facebook page; |
| Exhibit 3 | First group of messages between the two, wherein Cox inquired about the title; |
| Exhibit 4 | Second group of messages dated June 12, 2022, wherein W.H. indicated he would get the title from his mother and contact Cox after work; |
| Exhibit 5 | Third group of messages wherein Cox provided his address; |
| Exhibit 6 | Messages dated June 14, 2022 demonstrating that W.H. was on his way to Cox's residence. |
| Exhibit 7 | Messages dated June 16, 2022, after the trade had taken place. |
| Exhibit 8 | Photograph of the Kawasaki title Cox received from W.H. |

Cox testified that Appellant never contacted him.  The dirt bike Cox had traded to W.H. was never returned to him.

{¶34}   On cross-examination, Cox testified that when he saw W.H. in Wilmington, he followed W.H. and purposely stopped him.  Cox denied pushing W.H.  Cox testified that when the police arrived, they seemed confused by his explanation of the circumstances and he had to keep repeating that he thought W.H. had stolen the motorcycle from him.  Cox admitted that Appellant was not involved in arranging the sale and did not accompany W.H. to the exchange of vehicles.  Cox admitted that W.H. indicated that his mother owned the motorcycle.  Cox admitted Appellant's name was on the title he received.  Cox also admitted that he told Officer Butler that the bike belonged to W.H.'s mother, and that he suspected "the kid" who had acted "pretty shady."

{¶35} Cox further testified that W.H. had a notary seal and stamped the title in front of him but that the signature was already notarized except for the stamp. On redirect, Cox clarified that the title already had a signature from a notary and a date.  He interpreted W.H.'s actions in "stamping" the title as W.H. having authority to complete the transaction.[6]

   2. <u>W.H.</u>

---

[6] The testimony indicated that W.H. had something which made an impression on the paper of the title, which likely was a notary crimper.

{¶36} W.H. testified Appellant is his mother, they reside together, and she does not know how to ride motorcycles. Appellant's mother owned the blue Kawasaki motorcycle he had traded, but she had first planned to sell it in Dayton. After the sale didn't go through, Appellant told W.H. to take the title and the bike home. W.H. messaged Caleb Cox about trading motorcycles on Facebook after seeing a post Cox made.

{¶37} When W.H. arrived at Cox's address, Cox and he inspected the bikes and Cox test-drove the motorcycle. Then they exchanged titles. W.H. gave Cox a title for the blue Kawasaki in his mother' s name. Cox's name was not on the title W.H. was given for the dirt bike. W.H. loaded the dirt bike on his truck and left.

{¶38} W.H. testified that a few days later, his mother noticed her motorcycle was gone. She was angry and he was "in trouble." W.H. told Appellant he had traded the blue motorcycle for a lighter and easier bike. W.H. testified he did not tell his mother where Cox lived because he was embarrassed and didn't want her to go to Cox's home and "create a scene." W.H. testified his mother gave him a note "for the next time he saw Cox." W.H. testified his mother yelled at him so he went to his friend's house. W.H. confessed:

> Later that night, well before we had left, I took the spare key that she had for her bike and went to my buddy's house. I left my buddy's house and walked to Mr. Cox's house and knocked on his door. With no answer, so I slipped the note into the door hinge and took the bike and left.

{¶39} W.H. further testified his mother was not with him when he retrieved the motorcycle. Nobody from the police department reached out to him or his mother about any missing or stolen property. W.H. further testified he was in Wilmington and Cox came up behind him, struck him with his own bike, and pushed him to the ground. W.H. denied lying for his mother. He testified he was "owning up to his mistake." W.H. testified if the police had ever contacted him, he would have admitted his guilt.

{¶40} On cross-examination, the prosecutor began by asking W.H. if he recalled Officer Hamilton questioning him about the trade. W.H. was unable to recall being asked. He said he couldn't recall because it had been over six months. W.H. testified that he didn't know his mother had admitted to both the Hillsboro and Wilmington police officers that she had taken the motorcycle. W.H. could not recall when the deal in Montgomery County took place, but it was before the deal with Caleb Cox.[7]

{¶41} Thereafter, the prosecutor played a video showing Officer Hamilton questioning W.H. in the back seat of the cruiser. In response to the video, W.H. testified he didn't understand the officer's questions at the time. He denied untruthfulness and testified his head was "unclear" and his wrist hurt after Cox

---

[7] We presume Montgomery County references the alleged prior deal in Dayton.

pushed him off the motorcycle.  W.H.'s testimony indicated he had left Cox a note "that said the trade was no good, to come and get [his] bike."

### 3.  Officer  Butler

{¶42} Officer Brian Butler of the Hillsboro Police Department responded to Cox's home regarding the initial report of Cox's stolen motorcycle.  Officer Butler testified that Cox had the keys and title to the motorcycle.  Butler also identified State's Exhibit 8, the title Cox was given to the motorcycle, testifying that Rebecca Martin was listed as the owner and that her signature was notarized as of June 13, 2022.

{¶43}  Officer Butler also identified State's Exhibit 9, an application for a duplicate title from the Montgomery County Clerk of Court.  The application, dated June 16, 2022, was signed also by Appellant and her signature was notarized. The application indicated that the title was "lost."  It appeared Appellant had successfully obtained a duplicate title although Cox would have been in possession of the original title and the motorcycle.  Butler also identified State's Exhibit 10, a copy of the duplicate title issued to Appellant.  The motorcycle was entered into LEADS[8] as "stolen."

---

[8] LEADS is the Law Enforcement Automated Data System which is a statewide computerized network which provides computerized data and communications for criminal justice agencies within the State of Ohio. O.A.C. 4501:2-10-01(W).

{¶44}  Officer Butler further testified that on July 2, 2022, Appellant informed him that W.H. had given her Cox's address and she had retrieved the motorcycle herself during the early morning hours of June 18, 2022.  Officer Butler testified that he showed Appellant a copy of the title to the motorcycle and she confirmed she had signed the title as the seller.  Appellant also advised Officer Butler that she had applied for a lost title on June 16, 2022, in Montgomery County.  Appellant told Officer Butler that W.H. was operating the motorcycle on July 1st because it was "his bike."

{¶45} On cross-examination, Officer Butler admitted that Cox told him that "the title was in the mother's name, and Rebecca Martin's name was on the title that he showed me."  Officer Butler admitted that when he ran the title through LEADS, it "came back" to Appellant.  Butler admitted although he had text communications with Cox for a few weeks after the report was taken and Cox had told him there was a witness, he didn't investigate further.

{¶46} Officer Butler testified he entered the motorcycle in LEADS as "stolen" on June 20, 2022, but had delayed the process in order to get legal advice from the prosecutor due to the "odd" circumstances of Appellant being listed as the titled owner but Cox reporting the motorcycle as stolen.  Butler admitted he initially suspected W.H. of theft,  but he wanted the prosecutor's opinion.

{¶47} Butler also admitted speaking with Appellant. She admitted to him that she took the motorcycle from the property because "it's my bike." Butler did not know how the motorcycle was actually removed. He admitted he did not confirm about the existence of a duplicate "lost" title before he entered the bike as "stolen." On redirect, Officer Butler testified his suspicions about W.H. changed when Appellant later came to the police department and advised she was the one who took the motorcycle on June 18, 2022.

4. Officer Matthew Hamilton

{¶48} Officer Hamilton of the Wilmington Police Department responded to the Quick Stop gas station on July 1, 2022 to Cox's report that the allegedly stolen motorcycle had been located. Hamilton testified that W.H. informed it was his motorcycle. Officer Hamilton checked the VIN number through LEADS and the motorcycle "came back as stolen."

{¶49} Officer Hamilton further testified that W.H. behaved "erratically." Then when Appellant arrived at the scene, she parked her vehicle between the motorcycle and the tow truck, obstructing the motorcycle from being loaded. Hamilton testified that W.H. "hopped" on the rollback and tried to take the keys from the ignition of the motorcycle. The motorcycle was eventually towed from the scene. Officer Hamilton

spoke with Appellant who was "argumentative." Appellant told him she had taken the motorcycle back after the trade.

{¶50} On cross-examination, Officer Hamilton testified he could not recall which party he spoke to first while preparing his report of the incident. He acknowledged that he was wearing a body cam and he turned it off during his investigation and then turned it back on.

5. Reuben Young

{¶51} Mr. Young testified on behalf of the defense that he discussed purchasing a motorcycle from Appellant through Facebook Marketplace in the summer of 2022. They agreed to meet at a gas station in Dayton around June 13th. He believes W.H. and another person accompanied her. The transaction ultimately was not completed because he was unable to withdraw money at the time. Mr. Young denied knowing Appellant prior to the attempted transaction. At the close of trial, the trial court admitted State's Exhibits 1 through 10.

{¶52} For the reasons which will follow, we find Appellant's arguments under this assignment to be without merit. While Appellant contends that she is the actual owner of the motorcycle at issue, this is not a novel strategy in cases involving grand theft of a motor vehicle. Furthermore, Appellant's argument that her alleged title ownership of the motorcycle is conclusive of the matter is erroneous.

{¶53} In *State v. Evenson,* 2023-Ohio-4196, - - N.E.3d - - (1st Dist.), a recent decision, Evenson was convicted of theft and unauthorized use of a motorcycle after accepting an insurance payout for his stolen motorcycle and thereafter, keeping both the motorcycle and the money after the motorcycle was found. On appeal, Evenson claimed that he was the motorcycle's rightful owner because the title was in his name at all times relevant to the case. He argued, as does Appellant, that he could not steal something he already owned. The trial court had overruled Evenson's motion for an acquittal under Crim.R. 29.

{¶54} In considering Evenson's appeal, the First District Court discussed the pertinent law set forth by the Ohio Supreme Court in *State v. Rhodes*, 2 Ohio St.3d 74, 442 N.E.2d 1299 (1982). The *Evenson* court noted that:

> [O]wnership in theft cases is governed by R.C. 2913.01(D). *Tajeddin v. Grange Mut. Cas. Co.,* 1st Dist. Hamilton No. A-8503270, 1987 WL 14760, 4-5 (July 29, 1987), citing *State v. Rhodes,* 2 Ohio St.3d 74, 442 N.E.2d 1299 (1982). Under that statute, the "owner" for theft-oriented offenses is "any person other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in the property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D).

*Evenson,* at ¶ 19. *Evenson* further explained:

> In *Rhodes,* the Ohio Supreme Court explained that "[f]or purposes of determining the commission of a theft offense under R.C. 2913.01, one need not hold a certificate of title to be in lawful possession of a motor vehicle." *Rhodes* at 76, 442 N.E.2d 1299. Thus, "it is unnecessary to prove 'title ownership in a specific person other than the defendant.' " *State v. Grayson,*

11th Dist. Lake No. 2006-L-153, 2007-Ohio-1772, 2007 WL 1113096, ¶ 26, quoting *Rhodes* at 76, 442 N.E.2d 1299. Rather, the state's evidence must "prove that a defendant deprived someone of property who had 'possession or control of, or any license or any interest in' that property." (Emphasis added.) *Rhodes* at 76, 442 N.E.2d 1299. "[T]he gist of a theft offense is the wrongful taking by the defendant, not the particular ownership of the property." *State v. Jones,* 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902, at ¶ 12, citing *State v. Thomas,* 8th Dist. Cuyahoga No. 87666, 2006-Ohio-6588.

*Evenson*, at ¶20. The *Evenson* court found that when viewed in a light most favorable to the State, a rational fact finder could have found that the insurance company was the owner of the motorcycle under R.C. 2913.01(D) and therefore, the trial court had appropriately denied Evenson's motion for acquittal.

{¶55} The *Evenson* court also discussed the Twelfth District's decision in *State v. Plata,* 12th Dist. Warren No. CA2013-05-049, 2014-Ohio-449, wherein the appellate court affirmed a title holder's conviction for theft of a car. *Evenson* noted:

> In *Plata,* there was significant evidence that Adrian Plata sold Michael Hodge a Mazda for $1,450 and handed Hodge an unnotarized signed copy of the vehicle's title along with a set of keys. *Id.* at ¶ 22. The Mazda was inoperable, so Hodge left it at Plata's house "until the necessary repairs could be completed." *Id.* at ¶ 4. Once repaired, Hodge "planned to have the title notarized." *Id.* But when Hodge returned the following week to retrieve the Mazda, the car had disappeared. *Id.* at ¶ 6. To make matters worse, Hodge learned that a duplicate title had been issued, nullifying the signed title in his possession. *Id.*

Plata cited R.C. 4505.04 to argue that "he was the owner of the vehicle, and as the owner, he could not be convicted of stealing 'his own car.' " *Id.* at ¶ 19. The *Plata* court rejected that proposition, because "title ownership in a specific person other than the defendant is not an element of a theft offense." *Id.* at ¶ 20, (citation omitted.) Consequently, the *Plata* court found that the jury could have concluded that "Hodge became the owner of the Mazda and appellant no longer had a lawful right to possession of the vehicle" when Hodge paid Plata in exchange for the keys and signed title. *Id.* at ¶ 22.

{¶56} The case law regarding theft cases is well-established. *See State v. Dettwiler,* 4th Dist. Highland No. 21CA10, 2022-Ohio-134, ( " '[T]he important question is not whether the person from whom the property is stolen was the actual owner, but rather whether the defendant had any lawful right to possession.' ") quoting *State v. Gau,* 11th Dist. Lake No. 2018-L-044, 2018-Ohio-5191, ¶ 19, quoting *State v. Jones,* 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902, ¶ 12. " '[T]he gist of a theft offense is the wrongful taking by the defendant, not the particular ownership of the property.' " *State v. Miller,* 3rd Dist. Shelby No. 17-13-24, 29 N.E.3d 258, 2015-Ohio-644, ¶ 30, quoting *Jones* at ¶ 12. *See also State v. Canankamp,* 3rd Dist. Auglaize No. 2-22-02, 2023-Ohio-43, (Weight of the evidence presented at trial demonstrated that Canankamp deprived [the victim] (without his consent) of property over which he had possession or control.). In an older decision of this court, *State v. Turner*, 4th Dist. Scioto No. 98CA2580, 1998 WL 886528, (Nov. 30, 1998), the appellant argued that the showing of a defective title was a complete defense to the charge of unauthorized use of a motor vehicle in

violation of R.C. 2913.03.  This court observed that appellant's theory ignored substantial evidence that he made a valid agreement to transfer the vehicle to [the victim] and that appellant did, in fact, relinquish control of the vehicle to her.  *Id.* at \*1.  The language of these cases is easily traced back to *Rhodes, supra*, 2 Ohio St.3d 74, 76.

{¶57} In closing, defense counsel argued:

> But Cox told you the owner was Rebecca Martin.  The police detective wrote down the owner was Rebecca Martin.  Beyond a reasonable doubt and it don't hit that, it's not a crime.  [W.H.] told you he did it, the only testimony here is that a mama, after she finds out what trouble her son has done, tells them I went and got my property, my property.  That's it. \*\*\*Her son told you she never went there.  Her son told you he wouldn't even tell her the address, right.  The State said \*\*\*Ms. Martin confessed, she said I got the address and I went and got my property, that's it.  I went and got my property.

{¶58} It was up to the jury to determine the credibility of each witness, and to resolve any conflicts in the evidence.  Both Cox and W.H. provided the testimony regarding the circumstances of the trade of vehicles between them.[9]  What is undisputed is that W.H. gave possession of the Kawasaki motorcycle to Cox, along with keys and a title, indicating he had authority to transfer.  W.H. in fact relinquished control of the motorcycle.  The jury could have concluded that

---

[9] The jury also considered Cox's acknowledgement that W.H. was in high school when they traded vehicles, that Cox didn't register his own dirt bike, and that Cox was planning to sell the blue Kawasaki to make some "side money." These facts did not apparently sway them in their implicit finding that Cox was the more credible witness and was in fact a victim of crime.

W.H. was dishonest when he gave Cox the motorcycle title under his mother's apparent authority, or when he testified at trial that he did not have her permission to do so.

{¶59} The law enforcement officers provided testimony which, technically, appears to support Appellant's claim that she was the owner of the motorcycle. Their testimony also supported her admission that she retrieved the motorcycle from Cox's residence. The jury could have concluded that Appellant was dishonest when she spoke to the officers, dishonest when she applied for a duplicate lost title after finding out her son had traded the motorcycle to Cox, or dishonest when she allowed her son to testify on her behalf and put himself at risk for criminal liability.

{¶60} Given that the jury was in the best position to view the witnesses' demeanor and determine their credibility, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice requiring reversal of Appellant's convictions. Because Appellant's convictions are supported by the manifest weight of the evidence, sufficient evidence also supports them. Appellant's sixth assignment of error is without merit and is hereby overruled.

### ASSIGNMENT OF ERROR TWO - GRANTING OF STATE'S MOTION IN LIMINE

{¶61} On November 17, 2022, the State of Ohio filed a motion in

limine requesting the trial court exclude "any testimony from any witness or any exhibits regarding possible civil remedies available to the defendant had the defendant elected to pursue legal means to attempt to recover the motorcycle." The State asserted that the evidence would be irrelevant and confusing. The State further argued that because the case concerned a criminal matter, any evidence regarding civil remedies would only mislead and confuse the jury, causing extreme prejudice to the State.

{¶62} In response, Appellant countered that it appeared that the State was actually requesting preclusion of any evidence as to ownership, improperly lowering the State's burden of proof. Appellant argued that, "[t]he reality is that the State has accused Defendant of criminal activity saying she is not the owner and is now trying to preclude evidence that she is." As to the actual requested exclusion of civil remedy evidence, Appellant argued that the trial court would properly instruct and the jurors were presumed to be able to follow instructions. After the trial court granted the State's motion in limine, Appellant filed objections to the trial court's ruling.[10]

## A. STANDARD OF REVIEW

---

[10] In this case, the trial court initially granted the motion in limine. After the trial was continued, the trial court entered pretrial orders regarding the motion in limine and Appellant's proposed jury instructions. Thereafter, on the morning of trial, February 21, 2023, Appellant filed objections to the pretrial orders.

{¶63}   Because a trial court's decision on a motion in limine is a ruling to admit or exclude evidence, the standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. *State v. Stevens,* 2023-Ohio-3280, 224 N.E.3d 624, at ¶ 124; *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Hancock*, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, ¶ 129-130. A reviewing court may not override a trial court's determination that certain evidence is relevant or irrelevant simply because it disagrees with the trial court. *Hancock* at ¶ 129. " 'The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury.' " *Id*., quoting *Renfro v. Black*, 52 Ohio St.3d 27, 31, 556 N.E.2d 150 (1990).

{¶64} The effect of the granting of a motion in limine in favor of the State in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion. *State v. Prince*, 71 Ohio App.3d 694, 595 N.E.2d 376, 378 (4th Dist.1991), citing *State v. Grubb,* 28 Ohio St.3d 199, 503 N.E.2d 142 (1986), paragraph one of the syllabus. The motion in limine is thus merely a tentative ruling. Giannelli, Ohio Evidence Manual (1987)

23, Section 103.09.  At trial, it is incumbent upon a defendant, who has been

temporarily restricted from introducing evidence by virtue of a motion in limine, to

seek the introduction of the evidence by proffer or otherwise in order to enable the

court to make a final determination as to its admissibility and to preserve any

objection on the record for purposes of appeal.  *State v. Maurer,* 15 Ohio St.3d

239, 259-260, 473 N.E.2d 768, 786-787 (1984); *Grubb, supra*, at paragraph two of

the syllabus.

{¶65} In *State v. Hafer*, 4th Dist. Hocking No. 87CA21, 1988 WL 118700,

(Nov. 3, 1988), this court found that the issue of admissibility was not saved for

appellate review.  Citing Evid.R. 103(A)(1), we noted that although the issue of

admissibility was raised procedurally by a motion in limine, this was not sufficient

to obviate the necessity of objection at trial.  We explained the rule as summarized

in the second headnote in *State v. White,* 6 Ohio App.3d 1, 45 N.E.2d 533 (8th

Dist.1982):

> An order granting or denying a motion in limine is a tentative,
> preliminary or presumptive ruling about an evidentiary issue that
> is anticipated but has not yet been presented in its full context.
> Therefore, an appellate court need not review the propriety of
> such an order, unless the claimed error is preserved by an
> objection, proffer, or ruling on the record when the issue is
> actually reached and the context is *developed at the trial.*

(Emphasis added.)  *See Hafer*, at *4.

{66} In this case, Appellant filed written objections to the trial court's

ruling on her motion in limine on the morning of trial instead proffering said evidence and then raising an objection during the trial itself. While we need not consider Appellant's argument, in the interests of justice we review the argument and find that even if an objection had been entered during the course of trial itself, the trial court's ruling appears to have been correct.

## A. LEGAL ANALYSIS

1. Exclusion of evidence regarding civil remedies.

{¶67} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evidence that is not relevant is inadmissible. Evid.R. 402. *See State v. Jacobs*, 4th Dist. Highland No. 11CA26, 2013-Ohio-1502, at ¶ 32. Evid.R. 403(A) further provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Confusing evidence may be properly excluded under Evid.R. 403(A) "where its admission [would] have such a misleading effect that the jury's decision-making process [would] be adversely affected. [T]he danger must 'substantially' outweigh the probative value, and the mere possibility of danger will not be a basis for exclusion of evidence under [Evid.R.] 403. Exclusion based upon confusion usually is justified where the offered evidence

would require the trier of fact to engage in intricate, extraordinary or impossible mental gymnastics in order to comprehend the import of the evidence or to assess its weight." Weissenberger's Ohio Evidence Treatise (2007) 122, Section 403-5.

{¶68} In *State v. Pleatman*, 1st Dist. Hamilton No. C-160234, 2016-Ohio-7659, the appellate court found that the trial court did not abuse its discretion when it excluded evidence about a civil lawsuit which was irrelevant to the issue of Pleatman's intent in sending emails which had resulted in her criminal prosecution for telecommunication harassment. *Id*. at ¶10. The trial court had explained to defense counsel and the prosecutor how far they could inquire into an underlying real estate dispute, but noted, "[t]he details about legal positions and what's going back and forth ***has absolutely no bearing on whether or not her purpose in sending these communications was established by a statute." *Id. See also, State v. Rodriguez,* 12th Dist. Butler No. CA2007-08-222, 2009-Ohio-549, at ¶ 32.

{¶69} In the trial court's order of February 15, 2023, the trial court again granted the motion, subject to review, defined the definition of "Owner" under R.C. 2913.01(D), and stated:

> The Court finds that the issue of actual legal ownership of the motor vehicle which that is the subject of count one of the indictment is not an element of the offense. Whether the Defendant or the alleged victim, Caleb Cox, is the lawful owner of the motor vehicle is not going to be litigated as that is a civil issue.

{¶ 70} Based on our review of the testimony, we agree with the trial court's ruling excluding evidence of civil remedies and cannot find an abuse of discretion. The facts surrounding the transaction were confusing even to the officers who testified, ostensibly because of Appellant's actions. Given the confusing nature of this particular criminal matter, we agree that allowing testimony about the civil remedies possibly available to Appellant would have only added to the confusion and had a genuine potential to mislead the jurors.[11]

2. Evidence of ownership.

{¶71} Appellant argues that the language in the court's entry declaring that ownership was not going to be litigated in the criminal matter precluded her from presenting evidence of ownership. It did not. Evidence of alleged ownership was replete throughout the trial testimony, as discussed above, and via the documentary evidence. Based on the foregoing, Appellant's second assignment of error is without merit and is hereby overruled.

ASSIGNMENT OF ERROR THREE - ALLEGED
ERRONEOUS JURY INSTRUCTIONS

A. STANDARD OF REVIEW

---

[11] The trial court wrote in the decision that, in the court's view, evidence of possible available civil remedies was actually prejudicial to Appellant's case as it would demonstrate that she purposely did not exercise the options available to her and chose to exercise self-help by committing a crime.

{¶72} Appellant's request for three specific jury instructions was denied prior to trial.  In *State v. Kelly*, 4th Dist. Hocking No.20CA5, 2021-Ohio-2007, at ¶ 13, we discussed the appropriate standard of review of jury instructions:

> A trial court generally has broad discretion in deciding how to fashion jury instructions. *State v. Hamilton,* 4th Dist. Scioto No. 09CA3330, 2011-Ohio-2783, ¶ 69.  However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."  *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' " *Hamilton* at ¶ 69, quoting *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." S*tate v. Ellis,* 5th Dist. Fairfield No. 02 CA 96, 2004-Ohio-610, ¶ 19.

*See also, State v. Jones*, 4th Dist. Ross No. 16CA3574, 2018-Ohio-239, ¶ 10.

## B. LEGAL ANALYSIS

{¶73} Appellant's first requested jury instruction is as follows:

**Proposed Jury Instruction 1:  O.R.C. 2913.01 and 2901.04.**

The definition of owner includes two parts: 1) a person having control, possession, license, or interest in property or services and, 2) that the context doesn't require a different meaning.  The State must prove both parts of the definition.  If the State only proves one part, then they have not met their burden and you must find Rebecca Martin not guilty.

Appellant contends that the first jury instruction was a recitation of the statutes and the trial court omitted parts of the statutes. We disagree. R.C. 2913.01 defines "owner" and R.C. 2901.04, rules of construction, mandates that statutes defining offenses or penalties shall be strictly construed against the State and liberally construed in favor of the accused.

{¶74} In this case, "owner" referenced Caleb Cox. The trial court instructed as follows:

ESSENTIAL ELEMENTS, COUNT ONE.

The essential elements of the crime of Grand Theft as charged in Count 1 are as follows: that the Defendant did; 1- with purpose to deprive the owner Caleb Cox; 2- of property; 3- knowingly obtain or exert control over said property; 4- without the consent of the owner or person authorized to give consent; and 5- that it occurred in Highland County, Ohio on or about the day alleged in the indictment.

The trial court also defined "Owner" as follows:

Now, owner means unless the context requires a different meaning any person other than the actor who is the owner of, who has possession of, I'm sorry who has possession or control of, or who has a license or interest in property or services even though the ownership, possession, control or license or interest is unlawful.

{¶75} The trial court gave a correct instruction of the definition of "owner." The trial court did not leave out parts. The trial court's instruction, as given, was sufficient to demonstrate that both parts needed to be proven, and the final sentence proposed by Appellant was not necessary. A trial court need not give instructions verbatim and may use its own language to communicate the same legal

principles in the language the court deems proper. *State v. Volpi*, 2023-Ohio-4488,

- - N.E.3d - -, at ¶ 107 (11th Dist.); *State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d

1160 (1992). Therefore, we find no merit to Appellant's argument.

{¶76} Appellant's second proposed instruction was as follows:

> **Proposed Jury Instruction 2: State v. Rhodes, 2 Ohio St. 3d 74, 76.**
> The important question is not whether the person from whom the property was stolen was the actual owner, but rather whether Ms. Martin had any lawful right to possession. Therefore, if you find that Rebecca Martin had any lawful right to possession, then you must find her not guilty.

Appellant claims that an instruction regarding the lawful right to possession under

*Rhodes* as set forth in the second proposed instruction was warranted because both

parties were claiming ownership or interest in the same vehicle.

{¶77} In the court's decision/pretrial orders denying the proposed

instruction, the trial court wrote:

> [T]he holding in *State v. Rhodes* did not support Defendant's request because the issue in *Rhodes* was whether it was necessary to introduce a certificate of title to a motor vehicle in order to prove that the alleged victim was the owner. *** The gist of this case is whether the Defendant committed a criminal offense in recovering possession of property.

The instructions to be given at trial should be "fact specific and based upon the

indictment, testimony, evidence, and defenses available to the defendant." *Volpi,*

*supra*, citing *State v. Jordan,* 11th Dist. Lake No. 2009-L-006, 2009-Ohio-6152, ¶

40. To have given the second proposed instruction would not have been a correct statement of the law. We cannot find that the trial court abused its discretion in denying this proposed instruction. This argument is also without merit.

{¶78} Appellant's third proposed instruction was as follows:

**Proposed Jury Instruction 3: O.R.C. 3109.01 and 4505.031**
Whether or not someone has any lawful right may include civil and criminal aspects. For instance, you might consider what rights the Defendant had under contract or civil law. If under civil or criminal laws you find that Defendant had any right to possession, then you must find her not guilty.

Here, Appellant argues that in disallowing the third instruction, the trial court prejudged her defense and kept her from presenting proof as to an element of the offense, i.e., ownership.

{¶79} R.C. 3109.01 provides that a person age 18 or more, and under no legal disability, is capable of contracting for all purposes. R.C. 4505.031 states that "no minor under eighteen years of age shall sell or otherwise dispose of a motor vehicle" unless certain requirements are met, including a signature from one of the minor's parents. Again, Appellant was not precluded from presenting evidence of ownership in this case. In a criminal case involving theft, as the trial court reiterated throughout the proceedings, evidence of Cox's ownership was not being litigated and "the gist" of the matter before the court and jury was whether or not Appellant committed a criminal act in obtaining the motorcycle from Caleb

Cox's premises.  Again, we find no merit to Appellant's argument.  Based on the foregoing, Appellant's third assignment of error is hereby overruled.

## ASSIGNMENT OF ERROR FOUR - ALLEGED PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

{¶80}  The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced.  *State v. Patton*, 4th Dist. Highland No. 18CA9, 2019-Ohio-2769, at ¶13, citing *State v. Smith,* 97 Ohio St.3d 367, 376, 780 N.E.2d 221 (2002). (Internal citations omitted.)  "To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different."  *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 83, citing *State v. Moore,* 2012-Ohio-1958, 970 N.E.2d 1098, ¶ 76 (8th Dist.).  Thus, "[n]ot every intemperate remark by counsel can be a basis for reversal."  *State v. Landrum,* 53 Ohio St.3d 107, 112, 559 N.E.2d 710 (1990).

{¶81}  " 'The "conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." ' " *State v. Purdin,* 4th Dist. Adams No. 12CA944, 2013-Ohio-22,  at ¶ 31, quoting *State v. Givens*, 4th Dist. Washington No 07CA19, 2008-Ohio-1202, ¶ 28, quoting *State v. Gest,* 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995).

Therefore, the "touchstone analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an 'error free, perfect trial.' " *State v. Purdin,* 4th Dist. Adams No. 12CA944, 2013-Ohio-22, at ¶ 31, quoting *Gest* at 257. "Further, an appellate court must not focus on isolated comments but must examine the prosecution's closing argument in its entirety to determine whether the prosecutor's comments prejudiced the defendant." *Topping* at ¶ 84, citing *State v. Treesh,* 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001*)*; *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).

## B. LEGAL ANALYSIS

{¶82} We are mindful that "[d]uring closing arguments, the prosecution is generally given wide latitude to convincingly advance its strongest arguments and positions." *Topping* at ¶ 83, citing *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. In fact, " '[p]rosecutorial misconduct constitutes reversible error only in rare instances.' " *Purdin* at ¶ 31, quoting *State v. Edgington,* 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶ 18, citing *State v. Keenan,* 66 Ohio St.3d 402, 406 (1993). " 'Nevertheless, a prosecution must avoid going beyond the evidence presented to the jury to obtain a conviction.' " *Topping* at ¶ 83, quoting *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[P]rosecutors must be diligent in their efforts to stay within the boundaries of

acceptable argument and must refrain from the desire to make outlandish remarks, misstate evidence, or confuse legal concepts." *State v. Fears,* 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999).  However, a prosecutor may comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn from it.  *State v. Lott,* 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

{¶83} For ease of analysis, we will group the allegedly prejudicial remarks as relating either to W.H. or to Appellant.

1. W.H.

{¶84} Appellant claims that the prosecutor engaged in misconduct by making improper commentary, misstatements of the evidence, citing facts not in evidence, and engaging in improper attacks on credibility.  The prosecutor made several statements directed towards W.H.:

[W.H.] lied to you today.

[W.H.] will say anything to keep [his mom] out of trouble.

You know[W.H.'s] not a truthful person because he lied to Officer Hamilton, he lied on the stand today. ***[W.H.] lied to you today.***That story that [W.H.] told you…another of [W.H.'s] lies.***[W.H.], *** I think is somebody that if he opens his mouth you have to be concerned there is a lie coming out.

Appellant also argues this cross-examination was improper:

Q:     Is it a lie?

> A:     No.
>
> Q:     Well, it has to be a lie if it's dated the 13th, which is
>        after the deal in Montgomery County.

The above excerpts demonstrate that four times the prosecutor insinuated W.H. lied.  The prosecutor used the term "lie" or "liar" to reference W.H. six times.  On cross-examination, the prosecutor's remark accused W.H. of lying.

{¶85} Prosecutors may characterize a witness as a liar, or claim that a witness lied, where the evidence reasonably supports that characterization. *See State v. McCray*, 2017-Ohio-2996, 91 N.E.3d 288, at ¶ 53; *State v. Howard,* 1st Dist. Hamilton No. C-130058, 2014-Ohio-655, 2014 WL 787028, ¶ 32.   During cross-examination, W.H. was evasive when questioned about the events when he was discovered with the motorcycle and questioned by Officer Hamilton.  If his trial testimony is to be believed, it seemed to indicate that he knew that he did not have permission from his mother to trade the blue motorcycle and that he deliberately deceived her and Cox.  Further, W.H., if believed, sneaked under cover of darkness and took the motorcycle from Cox's residence without returning Cox's dirt bike to him, another deceptive act.  W.H. testified that he left a note on the door but to the contrary, Cox testified he did not have a note.  We find that the

prosecutor's remarks were reasonably drawn from the evidence so no error occurred.

2. Appellant

{¶86} Appellant has alleged several instances of prosecutorial misconduct based on the prosecutor's remarks. However, Appellant objected to only one of the instances during the trial. Therefore, with the exception of the first instance, the remaining remarks will be reviewed for plain error. Appellate courts take notice of plain error " ' "with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." ' " *Lawson, supra,* at ¶ 15, *quoting State v. Mammone,* 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 69, *quoting State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Crim.R. 52(B). To prevail, Appellant must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *See Mammone* at ¶ 69, citing *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *see also State v. Bethel,* 4th Dist. Jackson No. 13CA11, 2014-Ohio-3861, ¶ 11.

{¶87} Appellant contends that the following instances degraded her Credibility by calling her a liar, misrepresenting the evidence, expressing personal opinion, offering improper character evidence, improperly commenting on her guilt, and stating facts not in evidence:

She knew exactly about the deal with [W.H.] between [W.H.] and Caleb. ***She knows exactly what's happening because as soon as she realized, a parent, I know yes maybe he didn't like the bike after he traded or maybe they were just going to uh more than likely just take Caleb for both bikes. On June the 13th the Defendant signs the back of the title with the intention of [W.H.] stealing the motorcycle to Caleb. [sic]

{¶88} Appellant objected to only the last sentence, "On June the 13th, the Defendant signs the back of the title with the intention of [W.H.] stealing the motorcycle to Caleb. [sic] Given that "purpose" and intent were to be proven at trial, and that intent may be shown by circumstantial evidence, we find that the prosecutor's comment was a fair representation of the evidence. We find no error, let alone plain error in this regard.

{¶89} Appellant also argues the following statements were improper and unfairly prejudicial:

Martin lied to obtain a duplicate title, she snuck onto the property in the middle of the night, took the motorcycle in secret.***She went to Montgomery County and lied under oath. ***My fake title, my duplicate title that I lied to get. ***She's a liar, she's a thief, she trespasses, covers up for her son, allows her son to take the fall for her but she is not the victim. ***So it's [the officer's]fault that Martin's a liar?***Had she handled the situation like a law abiding citizen, we wouldn't be here.***But do we excuse criminal behavior because we're moms? Is it okay to lie to law enforcement allow your son to lie, cheat and steal because you're a mom? I don't think so. And she's mother of the year, trying to keep her son out of trouble, but didn't seem too motherly today when she let him take the stand and take the fall for her, did it?

> She's guilty of this crime.   * * * If you believe the Defendant's argument, you literally are rewarding her * * * for being a crafty criminal and having a good criminal plan.
>
> She thinks that it's fine for her to do that, because she thinks that since she went and applied for a duplicate title it's her property again so she can just go and take it in the middle of the night.  That's not the law.  That is not the law.  As soon as she went onto his property without permission to steal that bike back, she committed the crime of breaking and entering period.  And she is guilty of it.

{¶90}  The prosecutor called Appellant a liar seven times, called her a thief, and insinuated that Appellant allowed her son to "lie, cheat, and steal." At no time did the prosecutor preface her remarks with "the evidence demonstrates…."  " '[I]t is improper for a prosecutor to state that the defendant is a liar or that he believes the defendant is lying, but a prosecutor may suggest that the evidence demonstrates the defendant is lying, scheming, or has ulterior motives.' "  *State v. Searfoss,* 2019-Ohio-4619, 135 N.E.3d 853, at ¶145 (6th Dist.), quoting *State v. Irwin,* 7th Dist. Columbiana No. 11-CO-6, 2012-Ohio-2704, at ¶ 116, citing *State v. Kroger,* 12th Dist. Clermont No. CA99–05–050, 2000 WL 342130, *2 (Apr. 3, 2000).

{¶91}  We find that the prosecutor's remarks are fairly characterized as "overkill," certainly improper, but also harmless.  As to Appellant's argument that the above remarks misrepresented the evidence or Appellant's intent, we find this argument to be without merit.

{¶92} One of the required elements of Grand Theft of a Motor Vehicle which the State had to prove was "with purpose to deprive." The State was also required to prove the element of "purpose to commit a felony." The court defined purpose and stated: "Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his or in this case her consent."

{¶93} This court has stated in *State v. Hogue,* 4th Dist. Hocking No. 17CA6, 2018-Ohio-3887:

> Further, regarding circumstantial evidence of intent, it has been stated that "[i]ntent lies within the privacy of an individual's own thoughts and is not susceptible of objective proof." *State v.Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756,at ¶ 30; quoting *State v. Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). So "intent 'can never be proved by the direct testimony of a third person.' " *State v. Moon,* 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 20; quoting *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990). Rather it " 'must * * * be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense.' " *Id.*; quoting *State v. Wilson,* 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 41. But "persons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *Garner* at ¶ 60.

*Hogue, supra,* at ¶17.

{¶94} Circumstantial evidence of Appellant's intent and purposes as relates to the circumstances of this case may be inferred. The evidence at trial demonstrated Appellant's dishonest act of applying for a duplicate title while

aware that her son had traded the motorcycle. If the law enforcement officers are to be believed, then Appellant lied to them both about retrieving the motorcycle. In light of the evidence presented at trial, we do not find that a reasonable probability exists that but for the prosecutor's improper remarks, the jury would have found Appellant not guilty of Grand Theft of a Motor Vehicle and Breaking and Entering.

{¶95} Had W.H. not testified, Appellant could still have been convicted based on the evidence which the State elicited from Caleb Cox, Officer Butler, and Officer Hamilton. The trial court instructed the jury that the attorneys' statements are not evidence. We presume that the jury understood the instructions and acted accordingly in its deliberations. Based on the foregoing, we find no merit to Appellant's fourth assignment of error. Accordingly, it is hereby overruled.

## ASSIGNMENT OF ERROR FIVE - ERRONEOUS ORDERS OF RESTITUTION

{¶96} Appellant challenges the trial court's order of restitution for towing and storage fees and that the motorcycle's title be transferred to Caleb Cox. The trial court's orders were made immediately after the verdict, without a separate hearing. Appellant was unable to present evidence. The State responds that Appellant did not raise these issues at sentencing and therefore her arguments are to be reviewed under a plain error standard of review. The State is correct on this point.

## A. STANDARD OF REVIEW

{¶97} " 'Prior to increasing, reducing, or otherwise modifying a sentence that is appealed, or vacating the sentence and remanding the matter for resentencing, we will seek to determine whether the trial court's restitution order is clearly and convincingly contrary to law.' " *State v. Patton,* 4th Dist. Highland No. 18CA9, 2019-Ohio-2769, at ¶23, quoting *State v. Anderson,* 4th Dist. Scioto No. 15CA3696, 2016-Ohio-7252, ¶ 33.[12]

{¶98} "If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim * * * and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.18(A)(1); *Patton, supra,* at ¶24. "Economic loss" is defined in R.C. 29290.01(L) as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes * * * any property loss * * * incurred as a result of the commission of the offense." *Patton, supra.*

---

[12] In *State v. Dumas,* 2023-Ohio-1499, 213 N.E.3d 1203, the Seventh District recently noted that "[i]n Ohio, lingering issues exist over the proper standard of appellate review of felony restitution orders." *Id*. at ¶21. While the Supreme Court of Ohio's decision in *State v. Marcum*. 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 set forth the "clear and convincing" standard, *Dumas* noted that the Fifth and Eighth appellate districts continue to apply the abuse of discretion standard of review, while other court have applied the clear and convincing standard under R.C. 2929.18(A)(1).

{¶99}  While Appellant requested the matter be continued for pre-sentence investigation, Appellant did not actually object to the lack of a restitution hearing or to the restitution order.  Therefore, we will review for plain error.  *See State v. White*, 4th Dist. Adams No. 18CA1080, 2019-Ohio-4288, at ¶22.

## B. LEGAL ANALYSIS

{¶100} The amount of restitution the trial court orders must " 'bear a reasonable relationship to the actual loss suffered as a result of the defendant's offense.' " *State v. Alexander*, 4th Dist. Scioto No. 10CA3402, 2012-Ohio-2041, ¶ 12, quoting *State v. Johnson*, 4th Dist. Washington No. 03CA11, 2004-Ohio-2236, ¶ 11.  Additionally, " 'the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty.' " (Other citations omitted.)  *Id.*, quoting *Johnson* at ¶ 10.  An award of restitution is limited to the actual loss caused by the defendant's criminal conduct for which he was convicted. *State v. Jones,* 10th Dist. Franklin No. 14AP-80, 2014-Ohio-3740, ¶ 21.  " 'The evidence to support a restitution order can take the form of either documentary evidence or testimony.' " *Id.* at ¶ 52, quoting *State v. Jones*, 10th Dist. Franklin No. 14AP-80, 2014-Ohio-3740, ¶ 23.

1.   Storage fees.

{¶101}  The trial transcript reflects that by sentencing, Caleb Cox was no

longer present in the courtroom. The transcript reflects the court's pronouncement

at sentencing as follows:

> [Y]ou're ordered as part of that to pay any storage fees that may have been incurred due to storage. ***at ***Clinton County. But it is to be released to him free of any storage fees.

The judgment entry of conviction states:

> In addition, the Court orders Kawasaki released free of storage fees. Released to Caleb Cox. Rebecca Martin is responsible for storage fees.

{¶ 102} R.C. 2913.92, theft involving motor vehicle; offender to pay towing

and storage fees, authorizes a trial court to order restitution as follows:

> If a person is convicted of a theft offense that involves a motor vehicle, as defined in section 4501.01 of the Revised Code, or any major part of a motor vehicle, and if a local authority, as defined in section 4511.01 of the Revised Code, the owner of the vehicle or major part, or a person, acting on behalf of the owner, was required to pay any towing or storage fees prior to recovering possession of the motor vehicle or major part, the court that sentences the offender, as a part of its sentence, shall require the offender to repay the fees to the local authority, the owner, or the person who paid the fees on behalf of the owner.

However, both the trial court's verbal order and the sentencing entry are

unclear as to whether the storage fees were to be paid to the police department or

to Caleb Cox.

{¶103} Furthermore, before a court may impose a financial sanction, it is

required to consider the defendant's present and future ability to pay. R.C.

2929.19(B)(5); *State v. Strange,* 4th Dist. Adams No. 22CA1156, 2023-Ohio-495, at ¶ 10 (internal citations omitted.)  There are no specific factors the trial court must consider in its analysis, nor must it make any specific findings.  *Id.  See State v. Freeman,* 1st Dist. Hamilton No. C-180090, 2018-Ohio-4973, ¶ 10; *State v. Percy*, 8th Dist. Cuyahoga No. 109502, 2021-Ohio-1876, ¶ 19.  "As long as the record contains some indication that the court considered the offender's present and future ability to pay, the court's imposition of a financial sanction is not contrary to law." *State v. McCants,* 1st Dist. Hamilton No. C-190143, 2020-Ohio-3441, ¶ 12.

{¶104 }  The record herein does not contain evidence that the trial court considered Appellant's present and future ability to pay a financial sanction.  And while the trial court ordered the motorcycle be released to Caleb Cox free of storage fees, this record contains no evidence as to any amount of storage fees to be paid, and whether the fees are to be paid to Cox or to the police department. *See also State v. Lesure,* 6th Dist. Lucas No.L-02-1157, 2004-Ohio3454 (Since trial court did not determine defendant's ability to pay or specify the exact amount of restitution, restitution order was reversed and remanded solely on that issue).

{¶105 }Therefore, we find plain error occurred and we sustain the fifth assignment of error to the extent that the trial court ordered payment of storage fees without considering the Appellant's present and future ability to pay and without supporting evidence as to the amount of storage fees and the identity of the

person or entity to be paid.  Therefore, we vacate the restitution order and remand for the trial court's consideration of these issues.

2.   Transfer of Title.

{¶106} Appellant asserts that she had a property interest in the Kawaski motorcycle at issue and was deprived of due process when the trial court ordered the transfer of title to Caleb Cox as a form of restitution.  Appellant argues that she was unable to be heard on the issue due to the trial court's earlier rulings and due to the lack of a forfeiture hearing.  Again, we are mindful that Appellant did not interpose any objections so we will review only for plain error.  "Even constitutional rights 'may be lost as finally as any others by a failure to assert them at the proper time.' " *State v. Thiesen*, 4th Dist. Athens No. 22CA8, 2023-Ohio-2412, at ¶22, quoting *State v. Murphy*, 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001).

{¶107} Appellant was found guilty of Grand Theft of a Motor Vehicle.  Despite the title discrepancies, the jury obviously concluded that Caleb Cox was the rightful owner of the motorcycle after W.H., under apparent authority from Appellant, gave Cox physical possession of the motorcycle, title, and keys in exchange for Cox's dirt bike.  *See, e.g., Hitt v. Anthem Casualty Ins. Group.,* 142 Ohio App.3d 262, 755 N.E.2d 262, (11th Dist. 2001) (Court of appeals held that the insured became the owner of a dirt bike on the day he took physical possession

and not when the certificate of title was issued in his name, three days after an

accident).

{¶108}Black's Law Dictionary, Abridged Sixth Edition, 1991, defines

"forfeit" as "[t]o lose, or lose the right to, by some error, fault, offense, or crime; or

to subject, as property, to forfeiture or confiscation."  A "forfeiture" is [a]

comprehensive term which means a divestiture of specific property without

compensation; it imposes a loss by the taking away of some preexisting valid right

without compensation."  Since it was implicitly determined that Cox is the rightful

owner of the motorcycle at issue, it cannot be said that Appellant was deprived of

her own  property.  *See,* conversely, *Stacy v. Nichell*, 6th Dist. Wood No.

C.A.No.WD-84-82, 1985 WL 7502, (June 7, 1985) (Appellate court noted that

since Nickell was the rightful owner of a tractor-truck at issue, he could not be

found to have wrongfully converted his own vehicle).

{¶109}  Furthermore,"[c]ourts 'possess inherent power to do all things

necessary to the administration of justice and to protect their own powers and

processes.' " *In re Pierce,* 4th Dist. Meigs No.07CA4, 2008-Ohio-1956, at ¶ 9,

quoting  *Slabinski v. Servisteel Holding Co.*, 33 Ohio App.3d 345, 346, 515 N.E.2d

1021, (9th Dist. 1986).  The trial court's order that the clerk transfer title to Cox

was necessary to the administration of justice.  Therefore, we find no merit to

Appellant's argument that the order that the title be transferred to Caleb Cox

deprived her of a due process property right. This portion of Appellant's assignment of error is without merit and is overruled.

### ASSIGNMENT OF ERROR SEVEN - ALLEGED CUMULATIVE ERROR

{¶110} Under Appellant's final assignment of error, she asserts that her convictions should be reversed under the cumulative error doctrine. She contends that multiple errors deprived her of the constitutional right to a fair trial. "Under the cumulative-error doctrine, 'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal.' " *State v. Colonel*, - -N.E.3d - -, 2023-Ohio-3945, at¶ 64, (4th Dist.), quoting *State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith,* 2016-Ohio-5062, 70 N.E.3d 150, ¶ 106 (4th Dist.).

{¶111}" 'The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial.' " *State v. Hamad,* 11th Dist. Trumbull No. 2017-7-0108, 2019-Ohio-2664, at ¶ 123, quoting *State v. Apanovitch,* 33 Ohio St.3d 19, 24 (1987) (emphasis added), citing *State v. Maurer,* 15 Ohio St.3d 239, 266 (1984). "[I]t must be clear beyond a reasonable

doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." *Maurer, supra,* at 267, citing *State v. Smith,* 14 Ohio St.3d 13, 15 (1984). As previously discussed, the prosecutor's improper remarks constitute harmless error only. Consequently, we overrule Appellant's seventh assignment of error.

{¶112} We overrule the first, second, third, fourth, sixth, and seventh assignments of error. The fifth assignment of error is sustained in part and reversed in part and remanded for further proceedings consistent with this opinion.

**JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION and costs be assessed equally between the parties.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J., concur in Judgment & Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**