[Cite as *State v. Alexander*, 2012-Ohio-2041.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 10CA3402 |
| | : | |
| vs. | : | **Released: May 3, 2012** |
| | : | |
| DANIEL ALEXANDER, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Robert A. Cassity, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Joseph L. Hale, Scioto County Assistant Prosecutor, Portsmouth, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant Daniel Alexander appeals his conviction in the Scioto County Court of Common Pleas after a jury found him guilty of one count of theft from an elderly person and one count of breaking and entering. Appellant raises two assignments of error, arguing 1) the trial court erred in assessing restitution without hearing evidence as to the amount of restitution, and 2) the trial court erred because Appellant's conviction was against the manifest weight of the evidence. Having reviewed the record, we sustain Appellant's first assignment of error, overrule his second assignment of error, and remand the case for further proceedings.

FACTS

{¶2} On December 14, 2009, Harold Carey ("Carey") entered his garage and noticed his lawn trimmer (also referred to as a "weedeater"), a drill, and a pair of vice grips were missing. Carey called the police and Deputy Paul Bloomfield ("Dep. Bloomfield") of the Scioto County Sheriff's Office responded. Dep. Bloomfield examined the garage, but found no signs of forced entry.

{¶3} Carey explained to Dep. Bloomfield his suspicion it was Appellant, his neighbor and occasional employee, who had taken the items. Carey had previously employed Appellant to mow his lawn and shovel snow from his property. To enter his garage, Carey would unlock the side door, and often leave it unlocked, but closed, throughout the day if he planned to use the garage frequently. Carey would permit Appellant to enter his garage if necessary, but permission to do so was always limited and Carey monitored Appellant.

{¶4} Dep. Bloomfield explained he could not proceed without more evidence. Carey then inquired whether he could pretend he had a video camera in his garage to catch Appellant red-handed, and Dep. Bloomfield responded, "Please do." (Tr. at 24.)

{¶5} After Carey spoke to Dep. Bloomfield, Appellant's fiancé came to Carey's home to use the phone. Carey told her he was missing several items from his garage and he had a photo of Appellant taking one of them. Appellant spoke to

Carey about his accusation.  According to Carey, Appellant admitted he had taken the items and promised to repay Carey by early January.  The following day, the lawn trimmer appeared on Carey's property.

{¶6} Appellant, however, denies he admitted taking the items.  Appellant was aware Carey serendipitously regained possession of his lawn trimmer, but disclaimed being the one who had returned it.

{¶7} Appellant proceeded to trial and the jury convicted him of theft from an elderly person and breaking and entering.  The trial court sentenced Appellant to 11 months on each count, to be served concurrently.  Appellant now appeals.

## ASSIGNMENTS OF ERROR

I.    "The Trial Court Erred in Assessing Restitution without hearing Evidence as to the Amount of Restitution."

II.   "The Trial Court Erred because the Appellant's Conviction was against the Manifest Weight of the Evidence."

## LEGAL ANALYSIS

### A. Restitution

{¶8} In his first assignment of error, Appellant argues the trial court erred when it imposed restitution of $250 without receiving any evidence of the value of the unreturned items.  We agree.

{¶9} A defendant who fails to object to the amount of restitution waives all but plain error.  *State v. Johnson*, 4th Dist. No. 03CA11, 2004-Ohio-2236, at ¶ 8-9.

"[T]here are 'three limitations on a reviewing court's decision to correct [a waived error]. First, there must be an error, *i.e.,* a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' [The Supreme Court of Ohio has] interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *State v. Lynn*, Slip Opinion No. 2011-Ohio-2722, at ¶ 13, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Regarding the third limitation, "reversal is warranted only when the outcome of the trial clearly would have been different without the error." *Beebe*, at ¶10, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph two of the syllabus.

{¶10} Yet "[e]ven when all three prongs are satisfied, a court still has discretion whether or not to correct the error." *Lynn* at ¶ 14, citing *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶ 62. Courts are "to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id. at ¶ 14, quoting *Barnes* at 27, quoting *Long* at paragraph three of the syllabus.

{¶11} "If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim * * * and other

information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.18(A)(1). The court need only hold a hearing is the amount of restitution is disputed, R.C. 2929.18(A)(1), but a hearing to determine the offender's ability to pay is discretionary. R.C. 2929.18(E).

{¶12} "A trial court abuses its discretion when it orders restitution in an amount that has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the defendant's offense." *Johnson* at ¶ 11, citing *State v. Martin,* 140 Ohio App.3d 326, 2000-Ohio-1942, 747 N.E.2d 318 and *State v. Williams* (1986), 34 Ohio App.3d 33, 34, 516 N.E.2d 1270. "[T]he amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty." *Johnson* at ¶ 10, citing *State v. Sommer,* 154 Ohio App.3d 421, 424, 2003-Ohio-5022 at ¶ 12 and *State v. Gears* (1999), 135 Ohio App.3d 297, 300, 733 N.E.2d 683. "Since the amount of restitution must bear some reasonable relationship to the loss suffered, it logically follows that there must be some factual findings in the record to substantiate the figures." *State v. Poole* (Oct. 6, 1992), 4th Dist. No. 522. See, also, *State v. Poole* (Apr. 14, 1994), 4th Dist. No. 563

(reversing and remanding case when there was no evidence in the record to substantiate a restitution order).

{¶13} Here, the trial court proceeded to sentencing immediately after the jury returned its verdict.  When considering the issue of restitution, the trial court heard only the following from the prosecutor: "Our file has noted that the drill and vice grips that defendant was accused of stealing had a total value of $250.  The weedeater was returned."  (Tr. at 136.)  There was nothing else in the record bearing upon the value of the stolen goods.

{¶14} With no evidence in the record regarding the value of the drill and vice grips, we cannot find the trial court's order of $250 restitution bears a reasonable relationship to the actual loss Carey suffered as a result of Appellant's offenses.  Thus, we sustain Appellant's first assignment of error.  We vacate the portion of Appellant's sentence that ordered him to pay $250 restitution and remand the case to the trial court to determine the proper amount of restitution due Carey.

## B. Manifest Weight

{¶15} In his second assignment of error, Appellant argues his convictions are against the manifest weight of the evidence.  Specifically, Appellant argues he successfully impeached Carey's testimony by demonstrating Carey had lied about having photographic evidence of Appellant's guilt, and by demonstrating Carey

continued to employ Appellant for odd jobs after the alleged theft occurred.  We find no merit to Appellant's argument.

{¶16} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown,* 4th Dist. No. 09CA3, 2009-Ohio-5390, at ¶ 24, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.  A reviewing court "may not reverse a conviction when there is substantial evidence upon which the [trier of fact] could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt."  *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266, citing *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, at paragraph two of the syllabus.

{¶17} We must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier* (1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, citing *State v. Grant* (1993), 67 Ohio St.3d 465, 477, 620 N.E.2d 50.  The trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered

testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. "Moreover, '[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required.'" *State v. Blevins*, 4th Dist. No. 10CA3353, 2011-Ohio-3367, at ¶ 17, quoting *Thompkins,* supra, at paragraph four of the syllabus (construing and applying Section 3(B)(3), Article IV Ohio Constitution).

{¶18} R.C. 2913.02 provides:

"(A) No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent. * * *

"(B)(1) Whoever violates this section is guilty of theft.

* * *

"(3) * * * [I]f the victim of the offense is an elderly person * * *, a violation of this section is theft from an elderly person * * *, and division (B)(3) of this section applies."

R.C. 2911.13 provides:

"(A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.

* * *

"(C) Whoever violates this section is guilty of breaking and entering, a felony of the fifth degree."

Theft from an elderly person is a theft offense. R.C. 2913.01(K)(1).

{¶19} Regarding theft from an elderly person, an elderly person is anyone at least 65 years old. R.C. 2913.01(CC). It was undisputed Carey met the definition of "elderly."[1]

{¶20} While Appellant denied taking the items from Carey's garage, there was evidence he had. According to Carey, Appellant not only admitted to taking the property, but he offered to repay Carey for the items he no longer possessed. Appellant then returned the lawn trimmer. This showed Appellant knowingly exerted control over Carey's property without consent. Appellant's disposition of two-thirds of the property also leads to the conclusion his purpose was to deprive Carey of his property. Thus, there was substantial evidence Appellant committed theft from an elderly person.

---

[1] Carey was 79 when he testified at trial.

{¶21} Concerning Appellant's argument he had thoroughly impeached Carey, whether that occurred was a matter for the jury to decide. Carey admitted he lied when he told Appellant and his fiancé he possessed photographic evidence of Appellant stealing the lawn trimmer. It was the jury's province to believe Carey – believe his lie was merely part of a ruse designed to elicit incriminating evidence from Appellant – or to disbelieve Carey and consider him an untruthful and incredible witness, or any combination thereof. Based upon the verdict, the jury obviously gave credence to Carey's testimony, much to Appellant's chagrin. We see no reason to disturb the jury's determination of Carey's credibility.

{¶22} Likewise, there was substantial evidence upon which to convict Appellant of breaking and entering. To prove breaking and entering, the state needed to show Appellant trespassed in Carey's garage, by force, stealth, or deception, and intended to commit a theft offense. As the jury convicted Appellant of theft from an elderly person, it had already found Appellant had an intent to commit a theft offense once inside the garage. All that remained to determine was whether Appellant had consent to enter the garage and whether he entered by force, stealth, or deception.

{¶23} The jury was rightly instructed, "Force means any violence, compulsion, effort or constraint exerted or used by any means upon or against a person or thing to gain entrance." (Tr. at 122.) See, also, *State v. Lane* (1976), 50

Ohio App.2d 41, 45-47, 361 N.E.2d 541 (holding the effort necessary to open an unlocked door was sufficient to establish force), followed in *State v. Scott* (Aug. 12, 1992), 4th Dist. No. 457. Carey testified he generally kept the garage locked, but sometimes left the side door unlocked and closed if he would be using the garage throughout the day. Carey was also very insistent no one was permitted in his garage without his supervision. (Tr. at 45.)

{¶24} Given these facts, a finding that Appellant stole the items necessitates a finding he also used some effort to open the door, which qualifies as "force." Again, Carey had not given Appellant permission to be in the garage when he stole the items, meaning Appellant was trespassing when he stole the items. Thus, there was substantial evidence upon the jury convicted Appellant of breaking and entering.

{¶25} The jury did not lose its way, nor was there a manifest miscarriage of justice. Accordingly, we find Appellant's convictions were not against the manifest weight of the evidence and we overrule his second assignment of error.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION**.

Harsha, P.J., Concurring in part and Dissenting in part:

{¶26} I agree with the majority that Alexander's convictions for theft and breaking and entering are supported by the weight of the evidence. However, I see no error, plain or otherwise, in the trial court's order of restitution.

{¶27} R.C. 2929.18(A)(1) permits the court to base the amount of restitution it orders on various factors, including a generic reference to "other information." Here, the prosecutor informed the court that the two unreturned items "had a total value of $250." The statute also dispenses with the need for a hearing on the amount of restitution unless that amount is disputed. Id. Here, the defendant neither objected to the prosecutor's statement nor disputed the value stated. In my view, this silence amounts to forfeiture of the right to contest value provided by the prosecutor's "other information." Thus, the trial court was justified in relying upon it to issue its order of restitution.

{¶28} Assuming *arguendo* that the court's order was an abuse of discretion, I still would not apply plain error in light of Alexander's silence at a time when the court could have corrected such an error. In other words, I see no manifest miscarriage of justice here. See *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. See, also, Crim.R. 52(B) which states a reviewing court "may" notice plain error, i.e., a court is not required to do so.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that the Appellee and Appellant split costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Part and Dissents in part with Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**