[Cite as *State v. Conkey*, 2026-Ohio-547.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

State of Ohio,                      :           Case No. 25CA2

      Plaintiff-Appellee,         :           <u>DECISION AND</u>
                                           <u>JUDGMENT ENTRY</u>

      v.                            :

Gabriel L. Conkey,           :           **RELEASED 2/10/2026**

      Defendant-Appellant.     :

_____

<u>APPEARANCES</u>:

Christopher Pagan, Repper-Pagan Law, Ltd., Middletown, Ohio, for appellant.

Jason Holdren, Gallia County Prosecutor, and Isaac Beller, Gallia County Assistant Prosecutor, Gallipolis, Ohio, for appellee.

_____

Hess, J.

{¶1} Gabriel L. Conkey appeals from a judgment of the Gallia County Common Pleas Court, General Division, convicting him of murder. He presents two assignments of error asserting that (1) the juvenile court which bound him over to adult court erred by disregarding his procedural protections at the bindover hearing, and (2) the restitution sanction imposed by the trial court was clearly contrary to law. For the reasons which follow, we overrule the first assignment of error and sustain the second assignment of error. We vacate the restitution order and remand for the trial court to determine the proper amount of restitution after a hearing as required by R.C. 2929.18(A)(1). We affirm the trial court's judgment in all other respects.

## I.  FACTS AND PROCEDURAL HISTORY

**{¶2}**   On August 9, 2024, a complaint was filed in juvenile court alleging that Conkey, age 17, appeared to be a delinquent child for committing an offense which would be murder with a firearm specification if committed by an adult. The complaint identified Conkey's mother, stated that he was currently in her care and custody, and indicated they lived in Patriot, Ohio. The complaint did not mention Conkey's father. The day the complaint was filed, Conkey signed an affidavit of indigency form which indicated that he lived with his mother and stepdad, who were identified by name, in Scottown, Ohio.  Also that day, a juvenile demographic information form was filed which indicated Conkey was in the custody of his mother only and that they lived in Scottown. In the place for his father's information, a name is listed, along with markings which possibly suggest he also lived at that address.  But the person named is the one identified as Conkey's stepdad in the affidavit of indigency form.

**{¶3}**   On August 12, 2024, a second complaint was filed in juvenile court alleging that Conkey appeared to be a delinquent child for committing an offense which would be tampering with evidence if committed by an adult. The second complaint contained the same information about Conkey's mother as the first complaint.  The same day, the State filed a motion in both cases asking the juvenile court to transfer jurisdiction to the general division of the common pleas court for prosecution of Conkey as an adult.

**{¶4}**   On August 14, 2024, the juvenile court issued entries setting the cases for a probable cause hearing on August 21, 2024 at 2:00 p.m.  The proof of service for the entries indicates they were served on Conkey's mother in Scottown by regular mail on

August 15, 2024.[1] Conkey's mother appeared at the scheduled hearing. The juvenile court found Conkey was 17 at the time of the conduct charged, that there was probable cause to believe he committed the acts alleged in the complaints, which would be crimes if committed by an adult, and that there was probable cause to believe he had a firearm on or about his person or under his control while committing the offense of murder. Therefore, the juvenile court transferred the cases to the general division of the common pleas court for prosecution of Conkey as an adult.

{¶5} On September 11, 2024, an indictment was filed charging Conkey with murder with a firearm specification and tampering with evidence. At a pretrial hearing, an unnamed male appeared, and Conkey and the male indicated the male was Conkey's father. On December 30, 2024, Conkey entered a guilty plea to the murder count. The parties agreed to jointly recommend a prison sentence of 15 years to life, and the State agreed to move to dismiss the firearm specification and tampering count at sentencing.

{¶6} At the sentencing hearing, Conkey's mother appeared and stated that she lived in Scottown. The decedent's grandmother (who was also his adoptive mother) and sister appeared by Zoom; they were not sworn in during the hearing. The prosecution read aloud an email from the grandmother, who wrote in part that she had to pay for the decedent's "funeral expenses and soon his tombstone" herself, that the funeral was $3,632.28, and that the tombstone "is around" $1,200.

---

[1] The day was handwritten on each entry. The State evidently reads the handwriting as stating service occurred on the "1st," asserts that this is a mistake, and claims "the record establishes that the notice was filed and served by regular mail on August 14." The State does not direct us to anything in the record showing service occurred on August 14th, and we interpret the handwriting as referring to August 15th, though the author omitted the "h." Such a reading is consistent with the date the entry was issued and the fact that in other documents signed by the same deputy clerk who signed each proof of service, the day the "9th" is written without an "h."

**{¶7}** The court sentenced Conkey to a mandatory minimum term of 15 years and a maximum term of life in prison. The court asked if the grandmother was requesting restitution. The prosecution stated "it may be worth inquiring" about and noted she had sought reimbursement from a victims of crime program. The grandmother indicated no one had gotten back to her. The prosecution asked about the amount for the tombstone, and the sister stated, "They didn't give us an exact number." The grandmother said, "They said between, I could get a cheaper one, but the one I was looking at was from $1,000.00 to $1,200.00 so someone [sic] between there, $1,100.00." The prosecution said, "So because that's still in the process would it be fine to ask for $1,000.00 there and then the $3,632.28 for the funeral expense?" and the grandmother said, "Yes sir." Defense counsel stated that "this is the first I'm obviously hearing of restitution" and that counsel was "not in a position right now to acquiesce about potential restitution when it seems as though we're talking about estimates and things that have not yet, it sounds like been disbursed um, or paid out. Um, so I, I guess I formally would just object to that at this point." The prosecution told the court it had "no opposition to try and get documentation of that, give that to [defense counsel] and then both parties just submit something later." The court could then "make a ruling without a full hearing since we've taken a little bit of testimony today."

**{¶8}** The court stated, "Right now I see as um, [the grandmother] has, has testified um, forty six uh, $4,632.28 uh, from the burial expenses and the um, tombstone. And so um, I don't, what I'm going to do is go ahead and find that subject to any type of reimbursement. I'm going to let the State and you talk about that with the victim and if it comes up that there needs to be offset that we will address that uh, by a written motion

at a later date, okay?" The court noted defense counsel's objection and directed "the

State to be in contact with [the grandmother] on a regular basis to make sure if there is

any victim of crime funding that's provided that we make sure that there's an offset."

{¶9} The court issued an entry setting forth the sentence and dismissing the

remaining count and firearm specification. Regarding restitution, the entry states:

> Restitution was requested by the Victim on the Victim Impact Statement. There had been no agreement as to restitution. Defendant objected to an order of restitution. The Court finds that restitution to the Victim is appropriate in this case. The State informed the Court that Victims had requested compensation from the Victims of Crime Compensation Program but had not received an answer. Defendant shall pay $4632.28 to the Clerk of Courts for processing to the Victim. Defendant is ordered to pay a surcharge of not more than five per cent of the amount of the restitution otherwise ordered.

> The State is ordered to inform the Court if the Victims are granted compensation from the Victims of Crime Compensation Program. This restitution order shall be offset by any amounts so received by the Victims.

(Emphasis deleted.)

## II. ASSIGNMENTS OF ERROR

{¶10} Conkey presents two assignments of error:

**Assignment of Error I**: The juvenile court erred by disregarding Conkey's procedural protections at the bindover hearing.

**Assignment of Error II**: The restitution sanction was clearly contrary to law.

## III. LAW AND ANALYSIS

### A. First Assignment of Error

{¶11} In the first assignment of error, Conkey contends the juvenile court erred by

disregarding his procedural protections at the bindover hearing. He claims the court

"violated R.C. 2152.12(G), Juv.R. 30(D), and Due Process by failing to ensure the State's

service of a valid, bindover notification upon [his] parents." Conkey asserts that under

R.C. 2152.12(G) and Juv.R. 30(D), "written notice of the State's intent to transfer the case to adult court" must be served on a juvenile's parents at least three days before the bindover hearing and include the hearing date, time, and place. He claims the "State's transfer notification," i.e., its August 12, 2024 transfer motion, violates these provisions because: (1) it is silent about the hearing date, time, and place; (2) the certificate of service does not show service on his father even though he "was available for service because he later appeared at a pretrial hearing" in the trial court; and (3) the certificate of service indicates his mother was served at a Patriot address even though she stated that she lived in Scottown at the sentencing hearing. Conkey asserts that the juvenile court "failed to examine the notification requirements under R.C. 2152.12(G), Juv.R. 30(D) at the bindover hearing—including whether actual service on the mother and father was perfected, and whether the service had occurred at least 3 days before the bindover hearing." He claims the procedural safeguards attendant to bindover are constitutionally mandated, and given the "multiple violations of the notice safeguard," the transfer of his case to adult court "was unconstitutional under Due Process."

{¶12} Conkey waived his notice-related arguments by entering a guilty plea. "'Juveniles facing bindover to an adult court maintain the right to object to a juvenile court's noncompliance with bindover procedures and the right to appeal from any error *in the ordinary course of law.*'" (Emphasis in original.) *State v. Moore*, 2022-Ohio-460, ¶ 18 (4th Dist.), quoting *Smith v. May*, 2020-Ohio-61, ¶ 29. "In the ordinary course of law," a plea of guilty ""renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.""" *Id.*, quoting *State v. Fitzpatrick*, 2004-Ohio-3167, ¶

78, quoting *Menna v. New York*, 423 U.S. 61, 62, fn. 2 (1975). "'Therefore, a defendant who . . . voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."'" *Id.*, quoting *Fitzpatrick* at ¶ 78, quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "A guilty plea, however, does not waive a defendant's right to challenge the subject-matter jurisdiction of the court." *Id.* at ¶ 19, citing *State v. Keslar*, 1999 WL 1073961, *3 (4th Dist. Nov. 17, 1999). But "[i]f an error in a bindover proceeding is nonjurisdictional, it can be waived by a voluntary guilty plea or forfeited by the failure to preserve it in the juvenile court proceedings." *State v. Powell*, 2021-Ohio-200, ¶ 34 (4th Dist.). The errors Conkey alleges in the bindover proceeding are nonjurisdictional. See *Smith* at ¶ 2, 6, 30-34 (R.C. 2152.12(G) is not jurisdictional, so failure to provide timely notice under that provision did not prevent juvenile court from transferring jurisdiction to adult court); Juv.R. 44 ("These rules shall not be construed to extend or limit the jurisdiction of the juvenile court").

{¶13} Even if Conkey did not waive his notice-related arguments, they lack merit. Conkey did not object to the alleged errors below, so they are subject to plain error review. *See generally State v. Morgan*, 2017-Ohio-7565, ¶ 49 (plain-error standard applied in criminal proceedings applies when errors that are not preserved arise in juvenile-delinquency proceedings). "'Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice.'" *State v. Riggens*, 2025-Ohio-3028, ¶ 13 (4th Dist.), quoting *State v. Bailey*, 2022-Ohio-4407, ¶ 8, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. To prevail under the plain-error doctrine, Conkey "'must establish that "an error occurred, that the

error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial.'"" (Emphasis deleted.) *Id.*, quoting *Bailey* at ¶ 8, quoting *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶14} Conkey has not argued plain error on appeal, and even if he had, he has not shown error, let alone plain error. Under R.C. 2152.12(A)(1)(a), after the complaint was filed alleging Conkey was a delinquent child for committing an act that would be murder if committed by an adult, the juvenile court had to transfer the case at a hearing if Conkey was 16 or 17 at the time of the act charged that would be murder and there was probable cause to believe he committed the act. If the court transferred the murder case under that provision, R.C. 2152.12(F)(2) required that it also transfer the tampering with evidence case if it found probable cause to believe Conkey committed the act charged. R.C. 2152.12(G) states: "The court shall give notice in writing of the time, place, and purpose of any hearing held pursuant to division (A) or (B) of this section to the child's parents, guardian, or other custodian and to the child's counsel at least three days prior to the hearing."

{¶15} Juv.R. 30(A) states: "In any proceeding where the court considers the transfer of a case for criminal prosecution, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult." Juv.R. 30(B) states: "In any proceeding in which transfer of a case for criminal prosecution is required by statute upon a finding of probable cause, the order of transfer shall be entered upon a finding of probable cause." Juv.R. 30(D) states: "Notice in writing of the time, place, and purpose

of any hearing held pursuant to this rule shall be given to the state, the child's parents, guardian, or other custodian and the child's counsel at least three days prior to the hearing, unless written notice has been waived on the record."

**{¶16}** Conkey's argument focuses on the contents of what he calls the "State's transfer notification," i.e., the transfer motion. R.C. 2152.12(G) and Juv.R. 30(D) impose no requirements for such a motion. R.C. 2152.12(G) explicitly imposes a duty on the court, not the State, to provide the notice required by that provision. Juv.R. 30(D) implicitly imposes a duty on the court to provide the notice required by that provision; that the State has no duty under the rule can be inferred from that the fact that it is on the list of those who must be given notice.

**{¶17}** Conkey does not make any arguments about the notice the juvenile court provided in the August 14, 2024 entries. However, we observe that the entries indicated the probable cause hearing would occur August 21, 2024 at 2:00 p.m. in the Gallia County Court of Common Pleas, Juvenile Division. The proof of service for each entry indicated the entries were served on Conkey's mother in Scottown more than three days before the hearing.

**{¶18}** The proof of service for each entry does not reflect service on Conkey's father, but that is immaterial. It is true that R.C. 2151.12(G) and Juv.R. 30(D) both refer to a child's "parents," which is a plural term. However, the General Assembly has specifically instructed us to read statutes so that "[t]he singular includes the plural, and the plural includes the singular." R.C. 1.43(A). Thus, service upon Conkey's mother alone was sufficient to satisfy R.C. 2152.12(G). *See Turner v. Hooks*, 2018-Ohio-556, ¶ 4 (notice was given to biological mother and another individual as the child's father,

although his paternity had apparently not been established, and Supreme Court explained that regardless of that individual's paternity status, service on the mother alone was sufficient to satisfy R.C. 2152.12(G), citing R.C. 1.43(A)). The Juvenile Rules do not contain a similar rule of construction, but Juv.R. 2(BB) contemplates that both parents need not necessarily be a party to the action as its definition of a party includes "the child's parent or parents." *See State v. Reynolds*, 2007-Ohio-4178, ¶ 11 (explaining former Juv.R. 2(Y), which defined a party to include the child's parent or parents, contemplated both parents need not necessarily be a party to the action). Moreover, interpreting R.C. 2152.12(G) and Juv.R. 30(D) to require notice to both parents would render the use of the term "parents" "illogical under some circumstances such as where only one parent is living or the identity of one parent is unknown." *Id.* at ¶ 11 (interpreting R.C. 2152.12(G)). In this instance, the record does not indicate that the juvenile court knew the identity or whereabouts of Conkey's father prior to the transfer to adult court.

**{¶19}** Even if Conkey's father was entitled to notice, Conkey has not shown a reasonable probability of prejudice from the lack of notice. The record does not indicate his father's absence had any effect on the outcome of the proceedings. His mother was served with notice of and was present at the probable cause hearing. Conkey directs us to no evidence indicating she was unable to protect his best interests, such as evidence that she "might have harbored any prejudice or ill feelings against her son that could have affected her alignment with him and compromised her duty to protect the best interests of her child." *Reynolds* at ¶ 14 (considering this factor in its prejudice analysis).

**{¶20}** Accordingly, we overrule the first assignment of error.

### B.  Second Assignment of Error

**{¶21}** In the second assignment of error, Conkey contends the restitution sanction was clearly contrary to law.  Conkey asserts that the trial court erred by failing to hold a contested restitution hearing under R.C. 2929.18(A)(1), by failing to provide notice and a meaningful opportunity to present restitution evidence and defenses under Due Process, and by awarding more than the costs for funeral expenses incurred under R.C. 2929.01(L). Conkey maintains that R.C. 2929.18(A)(1) requires a "contested hearing when the defendant disputes" the amount of restitution, which defense counsel did. He asserts that under Due Process, the hearing "required sworn testimony—not mere statements," and it required cross-examination of the State's witnesses and an opportunity to present evidence and defenses. He asserts that the court violated the statute and Due Process by deciding restitution summarily, without adequate notice and a meaningful opportunity for him to be heard on evidence and defenses.  He asserts that if a hearing had occurred, he would have received invoices to substantiate the funeral expenses, could have required sworn testimony and authenticated exhibits, and could have "raised R.C. 2929.01(L) as a bar to an award for a future headstone expense."  The State concedes the case should be remanded for a restitution hearing.

**{¶22}** R.C. 2953.08(A)(4) authorizes a defendant who pleads guilty to a felony to appeal as a matter of right the sentence imposed on the defendant on the ground that it is "contrary to law."  R.C. 2953.08(G)(2) states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

"'[O]therwise contrary to law' means '"in violation of statute or legal regulations at a given time."'" *State v. Bryant*, 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990).

**{¶23}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶24}** "'An order of restitution imposed by the sentencing court on an offender for a felony is part of the sentence * * *.'" (Ellipses in original.) *State v. Minshall*, 2024-Ohio-1035, ¶ 15 (4th Dist.), quoting *State v. Danison*, 2005-Ohio-781, syllabus. R.C. 2929.18(A)(1) states in part:

Financial sanctions that either are required to be or may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's criminal offense or the victim's estate, in an amount based on the victim's economic loss. In open court, the court shall order that full restitution be made to the victim, to

the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court.

At sentencing, the court shall determine the amount of restitution to be made by the offender. The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution. The amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. . . . *The court shall hold a hearing on restitution if the offender,* victim, victim's representative, or victim's estate *disputes the amount.* The court shall determine the amount of full restitution by a preponderance of the evidence.

(Emphasis added.)

{¶25} "'"[T]he amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty."'" *State v. Martin*, 2024-Ohio-2334, ¶ 100 (4th Dist.), quoting *State v. Alexander*, 2012-Ohio-2041, ¶ 12 (4th Dist.), quoting *State v. Johnson*, 2004-Ohio-2236, ¶ 10 (4th Dist.). "'"The evidence to support a restitution order can take the form of either documentary evidence or testimony."'" *State v. White*, 2019-Ohio-4288, ¶ 23 (4th Dist.), quoting *State v. Noble*, 2017-Ohio-1440, ¶ 52, quoting *State v. Jones*, 2014-Ohio-3740, ¶ 23 (10th Dist.).

{¶26} The trial court erred by failing to hold a restitution hearing under R.C. 2929.18(A)(1). Because defense counsel disputed the amount of restitution, the trial court had to conduct a hearing pursuant to the statute. Instead, the court awarded restitution based on unsworn statements, which are not evidence. *State v. Reynoso*, 2025-Ohio-3119, ¶ 18-19, 23 (11th Dist.) (unsworn statements are not evidence, so victim's unsworn statements were not competent evidence that would support restitution

order).[2]   Accordingly, we conclude that the restitution order is clearly and convincingly contrary to law.  We sustain the second assignment of error, vacate the restitution order, and remand for the trial court to determine the proper amount of restitution after a hearing as required by R.C. 2929.18(A)(1). This decision renders moot the contentions that the trial court erred by failing to provide Conkey notice and a meaningful opportunity to present restitution evidence and defenses and in awarding more than the costs for funeral expenses incurred under R.C. 2929.01(L), so we need not address them.

## C.  Conclusion

**{¶27}** We overrule the first assignment of error and sustain the second assignment of error.  We vacate the restitution order and remand for the trial court to determine the proper amount of restitution after a hearing as required by R.C. 2929.18(A)(1).  We affirm the trial court's judgment in all other respects.

JUDGMENT AFFIRMED IN PART
AND VACATED IN PART.
CAUSE REMANDED.

---

[2] We observe that in addition to her email, the decedent's grandmother submitted a written Victim Impact Statement which states that it was "signed and affirmed as true under the penalties of perjury" and indicates that she had funeral and burial expenses in the amount of $5,800 ($4,000 for the funeral and $1,800 for the tombstone).  However, the statement is not notarized, and in any event, it is evident that the trial court did not use the figures in the written Victim Impact Statement when it determined the amount of restitution as the court ordered restitution in the amount of $4,632.28, not $5,800.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART and VACATED IN PART and that the CAUSE IS REMANDED.   Appellant and appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court, General Division, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
           Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**